**In the Interest of S.L.M. and J.A.M., Children.**

**No. 07–00–0241–CV.**

Court of Appeals of Texas, Amarillo.

Dec. 5, 2002.

William L. Rivers, Amarillo, for appellant.

Nancy J. Stone, Amarillo, for appellee.

Before REAVIS and JOHNSON, JJ., and BOYD, S.J.[1]

## OPINION ON MOTION FOR REHEARING

PHIL JOHNSON, Justice.

Our opinion dated August 15, 2002, is withdrawn and the following opinion is issued in its place.

Appellant Sharon Lee (Moore) Cooper appeals from a judgment on her Motion

---

1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

for Enforcement and a Motion to Modify filed by appellee Sammy Wayne Moore. Sharon challenges the trial court's (1) commencement date for the calculation of accrued child support, (2) failure to enter judgment until a later hearing, (3) jurisdiction to enter conservatorship and possession orders, (4) retroactive modification of child support obligations, (5) allowing offsets against accrued child support, (6) failure to issue a wage withholding order, (7) failure to award attorney's fees and costs to appellant and (8) failure to award interest on child support arrearage. We affirm the judgment and remand for issuance of a wage withholding order.

## FACTUAL BACKGROUND

Sharon and Sammy are the parents of two children: S.L.M., born May 16, 1981; and J.A.M., born April 18, 1984. Sharon, Sammy and the children were the subject of proceedings involving the parent-child relationship in cause number 39,974–C in the 251st District Court of Randall County. On February 26, 1997,[2] the trial judge signed an Order on Motion to Modify in Suit Affecting the Parent–Child Relationship which had been agreed to and approved by Sharon and Sammy. The order continued Sharon and Sammy as Joint Managing Conservators with Sharon to have possession of the children at all times not specifically awarded to Sammy, or as mutually agreed between Sharon and Sammy. The order also (1) directed Sammy to pay child support to Sharon in the amount of $782.80 per month in payments of $381.40 on the first and fifteenth of each month, with the first payment due on January 15, 1997, and (2) provided that the child support payments would be in the amount of $610.24 per month in the event any of certain specified contingencies occurred which would result in only one child being eligible for support payments. Sammy was also ordered to pay 50% of all uninsured health care expenses incurred by or on behalf of the children.

In April, 1998, S.L.M. moved from Sharon's residence to Sammy's residence. Sharon acquiesced in the move. After S.L.M.'s move, Sammy provided all of her support and began paying 100% of her uninsured medical bills. Following payment of his child support due on May 1, 1998, Sammy discontinued paying any child support to Sharon.

On December 2, 1998, Sharon filed a Motion for Enforcement of Child Support. Sammy's response, filed on December 17, 1998, included a Motion to Modify the 1997 order. He also pled for an offset or credit for money he expended in support of S.L.M. and for medical expenses he paid for her benefit while she was residing in his home.

On December 17, 1998, the trial court heard evidence on Sharon's Motion to Enforce. The trial judge declined to hold Sammy in contempt. The judge also deferred determining if any child support arrearage existed, and if so, the amount of the arrearage, until Sammy's Motion to Modify could be heard. On May 11, 1999, a hearing was held on Sammy's Motion to Modify. The court granted Sammy's motion and took the issues of child support arrearage and future child support under advisement.[3] An additional hearing was held on December 21, 1999, at which the

2. The actual date on the order is February 26, 1996. Neither party complains of the error in the date. We will refer to the order, as do the parties, as the February 26, 1997 order, or, simply as the 1997 order.

3. S.L.M. turned 18 on May 16, 1999. She was to graduate from her high school course of instruction in May, 2000.

court took further evidence on both pending motions.

On February 9, 2000, the judge signed orders as to both Sharon's Motion for Enforcement of Child Support and Sammy's Motion to Modify. The order on Sammy's motion modified his child support obligation as of December 17, 1998, to reflect his support obligation for J.A.M., who still lived with Sharon, and ordered *imposed on* Sharon *the obligation* to pay child support to Sammy for S.L.M., also effective as of December 17, 1998. In regard to possession of S.L.M. the order (1) provided that it was effective on the date that it was entered, (2) provided that Sammy had the sole right to establish the primary residence of S.L.M., and (3) modified the periods of possession so that Sammy had the right to possession of S.L.M. at all times not specifically awarded to Sharon.

The order on Sharon's motion included findings based on proceedings and evidence presented up to and including the filing of an affidavit by Sammy on January 14, 2000, as to S.L.M.'s medical expenses. Among other provisions, the order (1) stated that Sammy was entitled to offset for actual support provided for S.L.M. during periods of possession in excess of court-ordered periods of possession; (2) stated that Sharon failed to pay one-half of S.L.M.'s uninsured medical expenses as specified by the 1997 order and that Sammy was entitled to offset $6,668.11 for such expenses; and (3) provided that Sharon was obligated to Sammy in the amount of $6,909 as the result of her obligation to pay child support to Sammy beginning in April, 1998, and that Sammy was entitled to offset for that amount. The order directed that Sammy's accrued and unpaid child support of $12,556.80, be subject to offset of $13,577.11. No accrued child support, reimbursement or attorney fees were awarded to either Sharon or Sammy, and all relief requested and not granted was denied.

The court filed Findings of Fact and Conclusions of Law as to each of the motions. The findings of fact as to Sharon's motion to enforce included findings that: (1) Sammy was entitled to an offset for actual support provided during periods of possession in excess of court-ordered possession; (2) the amount spent by Sammy in support of S.L.M. from April, 1998, to May 11, 1999, was $13,737.64; (3) Sammy was entitled to offset for his entitlement to child support from Sharon from December 17, 1998 (the effective date of modification) through December 21, 1999 (the second hearing date), and his equitable right to child support from Sharon from April, 1998, through December 17, 1998; (4) the amount of offset for Sammy's entitlement to child support was $6,909; (5) Sammy was entitled to offset in the amount of $6,668.11 for Sharon's unpaid one-half of S.L.M.'s uninsured medical bills. The conclusions of law as to Sharon's motion to enforce included conclusions that: (1) Sammy was entitled to an offset for actual support provided during periods of possession in excess of court-ordered possession; (2) Sammy was entitled to offset for uninsured medical expenses he paid and to which Sharon did not contribute; and (3) Sammy was entitled to offset for Sharon's obligation to him for child support.

Sharon appeals from both orders. By 12 issues she challenges the trial court's actions in (1) modifying and reducing Sammy's child support obligations effective as of December 17, 1998, (the date his Motion to Modify was filed) and imposing on Sharon the obligation to pay child support for S.L.M. effective December 17, 1998, because no pleadings existed to support such orders; (2) miscalculating Sammy's child support arrearage by using an erroneous beginning date for calculating the arrear-

age; (3) failing to enter judgment on her Motion for Enforcement based on the evidence presented at the hearing of December 17, 1998, instead of delaying entry of judgment until after two more hearings were held and additional evidence offered as to Sammy's offsets and credits against child support arrearage; (4) entering an order as to possession and conservatorship of S.L.M. on February 9, 2000, because she turned 18 on May 16, 1999; (5) modifying Sammy's child support obligation retroactively, in that there are no pleadings to support such modification; (6) ordering Sharon to pay retroactive child support, in that there are no pleadings to support such modification; (7) allowing an offset to Sammy's child support arrearage for an "equitable right to child support" from Sharon as of April, 1998, when S.L.M. went to reside with Sammy with Sharon's permission; (8) allowing an offset to Sammy in excess of the amount of his periodic child support payment arrearage; (9) allowing an offset to Sammy's child support arrearage for one-half of the uninsured medical expenses he paid for S.L.M.; (10) failing to enter a wage withholding order as to Sammy; and (11), (12) failing to award Sharon attorney's fees, costs of suit, and interest on the child support arrearage.

## ISSUES 1 AND 2: SAMMY'S ACCRUED CHILD SUPPORT

Sharon's first two issues challenge the legal sufficiency of the evidence to support the trial court's finding regarding the date of the commencement of Sammy's support obligation pursuant to the February 26, 1997 order and the trial court's calculations based on that date. Sharon asserts that the court erroneously calculated support from March 1, 1997, because the February 26, 1997 order required the altered support amount to be started as of January 15, 1997. She also claims that the amount of support due through the hearing date of December 17, 1998, is conclusively established by the evidence to be $17,952.80 instead of $16,781.60 as the trial court found.

Findings of fact in a case tried to the bench have the same force and dignity as a jury's verdict upon questions. *See Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex.1991). A trial court's findings of fact are reviewable for legal and factual sufficiency by the same standards applied in reviewing the sufficiency of the evidence supporting a jury's finding. *Id.*

The record of the December 21, 1999 hearing reflects that the trial court took judicial notice of the February 26, 1997 order, as well as all other orders in the case. In doing so, the trial court noted that the order would "speak for itself" when ruling on an objection as to the child support parts of the order. We agree that the order speaks for itself.

The order directs Sammy to begin paying child support of $381.40 on the 1st and 15th of each month, beginning on January 15, 1997. The trial court erroneously based its calculations on the payments beginning March 1, 1997. The trial court thus calculated Sammy's total support due as of December 17, 1998, based on 44 payments instead of 47 payments. The amount of support due from Sammy was $17,925.80. Moreover, our review of the record does not support Sammy's assertion that Sharon effectively "invited" the trial court's erroneous use of the March 1, 1997 date to calculate Sammy's support obligations. Sharon did not urge the trial court to use the date of March 1, 1997, as the first date Sammy was required to pay the modified child support amount. *See Northeast Tex. Motor Lines, Inc. v. Hodg-*

*es,* 138 Tex. 280, 158 S.W.2d 487–88 (1942). Sharon's motion to enforce the child support obligation of Sammy was based on Sammy's failure to make any support payments after his payment of May 6, 1998. She alleged that specific payments were not made, beginning with the payment due on May 15, 1998. Neither (1) the amount paid by Sammy, (2) the fact that he discontinued payments after May 6, 1998, (3) the amount Sammy was to pay twice per month and the date payments were to begin (January 15, 1997) pursuant to the order of February 26, 1997, were in dispute. Omission of the three payments by the trial court caused an error in the trial court's calculation of Sammy's accrued support obligation by the amount of $1,144.20. However, for reasons set out in our discussion of Sharon's issues 11 and 12, we conclude that the error did not probably cause the rendition of an improper judgment, and we overrule issues one and two.

ISSUE 3: FAILURE OF TRIAL COURT TO ENTER JUDGMENT FOLLOWING FIRST HEARING ON MOTION TO ENFORCE

◼ Sharon's third issue asserts that the trial court erred in waiting to enter judgment on her Motion for Enforcement until after evidence was presented during hearings held subsequent to the hearing of December 17, 1998. She claims that her case for child support arrearage, attorney's fees and costs was fully proved on December 17th, and the trial court was required to enter judgment as of that date. She requests rendition of judgment in her favor based on evidence as of December 17, 1998, because TEX. FAM.CODE ANN. § 157.061(c) (Vernon 1966) [4] provides that the court shall give preference to a motion for enforcement of child support in setting a hearing date and may not delay the hearing because suit for modification of the child support order has been or may be filed.

◼ The setting and hearing of or continuing of pending motions are matters committed to the trial court's discretion. *See State v. Wood Oil Distrib., Inc.,* 751 S.W.2d 863, 865 (Tex.1988). The exercise of such discretion will not be disturbed on appeal unless the record discloses a clear abuse of discretion. *See id.; Villegas v. Carter,* 711 S.W.2d 624, 626 (Tex.1986). Furthermore, in a bench trial it is within the discretion of the trial court to permit evidence to be offered at any time when it clearly appears to be necessary to the administration of justice. *See* TEX.R. CIV. P. 270; [5] *In re J.A.H.,* 996 S.W.2d 933, 935 (Tex.App.-Waco 1999, no pet.). Among factors the trial court may consider in exercising its discretion to allow additional evidence in a matter are whether (1) due diligence was exercised by the parties in obtaining the evidence, (2) the additional evidence is decisive, (3) allowing additional evidence will cause undue delay and (4) allowing additional evidence will cause injustice. *See id.* The trial court does not abuse its discretion merely because it decides a matter differently than an appellate court might decide the matter. *See id.*

At the conclusion of the hearing of December 17, 1998, the trial court denied Sharon's motion to hold Sammy in contempt. The court also stated, in response to Sharon's objection to the court's failure to enter judgment for an arrearage, that it declined to rule on the arrearage owed by Sammy, if any, because of insufficient facts and some question as to how the law would

---

4. Further references to the Family Code will be by reference to "Family Code § __."

5. Further references to a Rule of Civil Procedure will be by reference to "TRCP _____."

apply to the factual and procedural record presented. Some of the facts sought by the court were going to be involved in determination of Sammy's Motion to Modify. The trial court set a further hearing in the matter for February 23, 1999.

S.L.M. was 16 years old when she went to live with Sammy in April of 1998, and when she filed a verified choice of Sammy to be her managing conservator in May, 1998. Sharon did not assert that S.L.M. stayed with Sammy without Sharon's permission. Sharon agreed that after S.L.M. moved to Sammy's home in April, Sharon did not pay any support for S.L.M., nor any of her medical bills incurred after April. Sammy testified that he had paid part of S.L.M.'s medical incurred after April, but that almost $10,000 remained outstanding. Sammy's answer pled that Sharon voluntarily relinquished the actual possession and control of S.L.M. and that Sammy was entitled to an offset for actual support he provided to S.L.M. during periods she stayed with him in excess of court-ordered possession.

We cannot say that the trial court clearly had no basis to allow further evidence on the issue of whether Sammy owed arrearage of child support, and if so, how much. The record of the December 17th hearing contains some evidence to support a conclusion by the trial court that additional evidence would be persuasive, if not decisive, on the amount of offset or credit to which Sammy would be entitled, and that delaying a ruling on the arrearages until after presentation of additional evidence would not cause an injustice. At the conclusion of the hearing the trial court scheduled another hearing date two months in the future for taking additional evidence.

■ An abuse of discretion does not exist if some evidence in the record shows the trial court followed guiding rules and principles. *See In re Epic Holdings, Inc.,* 985 S.W.2d 41, 57 (Tex.1998). Because some evidence supports the trial court's decision to take additional evidence before ruling on matters in Sharon's motion other than the contempt assertion, the trial court did not abuse its discretion in failing to enter a judgment based on the record and evidence presented at the December 17, 1998 hearing. Sharon's third issue is overruled.

## ISSUE 4: ENTRY OF CONSERVATORSHIP ORDERS AFTER CHILD'S 18TH BIRTHDAY

■ In issue four, Sharon urges that any questions of conservatorship and possession as to S.L.M. became moot after S.L.M. turned 18 years old on May 16, 1999, and that the February 9, 2000 order establishing conservatorship and possession as to S.L.M. is invalid because S.L.M. was over 18 at the time the order was entered. Sharon urges that the trial court lacked jurisdiction to enter conservatorship and possession orders as to an adult. She relies on the language of Family Code § 155.001 which provides that a court acquires continuing jurisdiction of a "child," in conjunction with Family Code § 101.003(a) and (c), which define "child" as a person under the age of 18 years and "adult" as a person who is not a child. She also cites *Birdwell v. Birdwell,* 819 S.W.2d 223 (Tex.App.-Fort Worth 1991, writ denied).

The February 9, 2000 order was signed pursuant to Sammy's Motion to Modify filed on December 17, 1998. Sharon does not question the trial court's jurisdiction over S.L.M. and jurisdiction to enter modification orders as of the date the motion was filed: in response to Sammy's Motion to Modify filed while S.L.M. was still 17 years old in December, 1998, Sharon agreed that Sammy should be designated

as primary custodian with the right to establish residence and the domicile of S.L.M. To the extent that the trial court had subject matter jurisdiction as to conservatorship and possession of S.L.M. prior to her 18th birthday, it retained jurisdiction after her birthday to enter orders as to conservatorship and possession for periods prior to S.L.M.'s 18th birthday on May 16, 1999. *See McLendon v. Allen,* 752 S.W.2d 731, 733 (Tex.App.-Corpus Christi 1988, no writ). Sharon does not claim, and has not shown, how she has been harmed by that part of the order providing for conservatorship and possession after S.L.M. turned 18. If the trial court's order was erroneous, the error was harmless as to Sharon. We overrule issue four.

## ISSUE 5: DO SAMMY'S PLEADINGS SUPPORT MODIFICATION OF PRIOR CHILD SUPPORT ORDER?

■ Sharon's issue five urges that no pleadings support the court's February 9, 2000 order modifying child support obligations of Sammy effective as of December 17, 1998. We disagree.

Sammy's Motion to Modify was included as part of the pleading containing his Answer and was filed on December 17, 1998. *See* TRCP 85. The certificate of service shows that the pleading was faxed and mailed to counsel for Sharon on December 16, 1998. Sharon appeared at and participated in the December 17th enforcement hearing. *See* Family Code § 157.063. Her counsel was aware of Sammy's pleading at the time of the hearing on December 17th, and did not dispute service of the pleading in accordance with the certificate of service. Nor does Sharon dispute service by fax and mail in her appellate brief.

Sammy's answer and motion to modify alleged that S.L.M. filed a document expressing her choice of Sammy as managing conservator and that she had been with him in excess of court-ordered times of possession. The pleading also asserted that prior support orders are not in substantial compliance with the Family Code and requested, among other matters, that if prior orders were modified to give Sammy the exclusive right to establish the primary residence and domicile of S.L.M., then the prior support order should be modified so as to order Sharon to make child support payments. Sharon filed no special exceptions to the pleadings.

Service of Sammy's answer and motion to modify by fax or mail is authorized by TRCP 124 and 21a. Support orders may be modified as to obligations accruing after the date of service or appearance in the suit to modify. Family Code § 156.401(b). The pleadings of Sammy are sufficient to both give fair notice of the issue, *see Holley v. Holley,* 864 S.W.2d 703, 707 (Tex. App.-Houston [1st Dist.] 1993, writ denied), and to support the February 9, 2000 order modifying child support. *See* TRCP 301. Sharon's fifth issue is overruled.

## ISSUE 6: DO SAMMY'S PLEADINGS SUPPORT THE ORDER THAT SHARON HAD AN OBLIGATION TO PAY CHILD SUPPORT?

■ By issue six Sharon urges that Sammy's pleadings are insufficient to support the trial court's order that she was obligated to pay child support for S.L.M. either as of December 17, 1998, or the time that S.L.M. went to live with Sammy in April, 1998. Sharon characterizes the child support as "retroactive" child support.

Sammy responds that the trial court's order was authorized by Family Code § 156.401. We agree, in part, with both parties.

The term "retroactive support" has been used in two different contexts. In one context, the trial court can order retroactive support if child support has not been previously ordered. *See* Family Code § 154.009; *In Interest of J.G.Z., J.N.Z., and J.B.Z.*, 963 S.W.2d 144, 146 (Tex.App.-Texarkana 1998, no pet.). As the term is used in the second context, the trial court may "retroactively" modify existing child support obligations to be effective as early as the time of service of citation or appearance in the suit to modify. *See* Family Code § 156.401; *J.G.Z.*, 963 S.W.2d at 147.

Child support obligations of the parents and the children during April, 1998, and subsequent times were the subject of an existing order. Thus, any "retroactive" support would be authorized only as the term is used in the second context. *See Peterson v. Office of Att'y Gen.*, 990 S.W.2d 830, 832–33 (Tex.App.-Fort Worth 1999, no pet.). In addressing Sharon's fifth issue we determined that pursuant to Family Code § 156.401(b), the answer and motion to modify served by Sammy's counsel on December 16, 1998, and file-marked December 17, 1998, were sufficient to support the trial court's order modifying Sammy's support obligations as of December 17, 1998. We also conclude that Sammy's pleadings seeking modification of the parent-child relationship were sufficient to both give fair notice that he sought an order that Sharon pay child support for S.L.M., *see Holley*, 864 S.W.2d at 707, and to support the trial court's February 9, 2000 order that Sharon pay child support as of December 17, 1998. *See* TRCP 301. The Family Code, however, does not permit modification of the 1997 order to require her to pay support before December 17th. *See Peterson*, 990 S.W.2d at 832–33.

Sammy's pleadings supported modification of the 1997 order and ordering Sharon to pay support as to periods on or after December 17, 1998. But, the Family Code does not authorize the order imposing on Sharon an obligation for child support for periods before December 17, 1998. For the reasons set out in our discussion of Sharon's issues 11 and 12, however, we conclude that the trial court's order imposing a child support obligation on Sharon for the period prior to December 17, 1998 did not probably cause the rendition of an improper judgment. We overrule issue six.

## ISSUE 7: OFFSET OF SAMMY'S ACCRUED SUPPORT BY RETROACTIVE SUPPORT SHARON WAS ORDERED TO PAY

Sharon's seventh issue asserts error by the trial court in crediting Sammy's arrearage with an amount calculated at $329 per month beginning in April, 1998. The amount attributable to months between April and December 17th was categorized by the trial court as arising from an "equitable right" of Sammy to receive child support from Sharon during the time S.L.M. resided with Sammy before December 17, 1998, when Sammy's Motion to Modify was filed. The amount attributable to months after December 17, 1998, when Sammy filed his pleading seeking offset and modification of the 1997 order, was the amount Sharon was ordered in the February 9, 2000 order to pay as support for S.L.M. effective December 17, 1998.

In response to Sharon's sixth issue, we have determined that the Family Code did not allow the trial court to retroactively impose a child support obligation on Sharon for the time prior to December 17, 1998. To the extent the trial court allowed offset to Sammy for an "equitable right" to receive child support from Sharon between April, 1998, and December 17, 1998, the trial court erred. For the reasons set out in our discussion of Sharon's issues 11 and

12, however, we conclude that the error did not probably cause the rendition of an improper judgment.

In response to Sharon's sixth issue, we have determined that the trial court was authorized by the Family Code to modify the February 26, 1997 order and to order Sharon to pay child support effective December 17, 1998.[6] To the extent that Sharon asserts error by the trial court in allowing an offset to Sammy for both the child support she was ordered to pay effective December 17, 1998, and for actual expenditures Sammy made on behalf of S.L.M. after that date, we conclude that, for the reasons set out in our discussion of Sharon's issues 11 and 12, the error did not probably cause the rendition of an improper judgment. Accordingly, we overrule issue seven.

## ISSUE 8: OFFSET IN EXCESS OF PREVIOUSLY–ORDERED PERIODIC PAYMENTS

■ Sharon's eighth issue asserts that the trial court erroneously granted offsets to Sammy in excess of the previously-ordered periodic payments he had been ordered to make. She argues that because the 1997 order provided for reduced support if one of the children married, died, had disabilities of minority removed, or was emancipated, then any offset allowed to Sammy was limited to the difference between the support for two children ($762.80 per month) and the reduced contingent amount for one child ($610.24 per month). She refers us to Family Code § 157.008(e) in regard to this assertion. She additionally urges that the trial court erred in allowing Sammy offset for her

retroactive support payments for the same time period that Sammy's actual expenditures were allowed as an offset.

In her Motion for Enforcement, Sharon sought confirmation of and judgment for the amounts ordered in the 1997 order for two children. Sammy's response sought offset for amounts of actual support he provided during the period S.L.M. was in his possession. He did not seek reimbursement of his expenditures as a counterclaim. Sharon does not contest the trial court's finding of fact that she voluntarily relinquished actual possession and control of S.L.M. to Sammy in excess of court-ordered periods of possession and access, and that Sammy supplied all actual support and medical attention for S.L.M. during those periods.

The trial court's findings of fact included findings that Sammy was entitled to offset for both $6,668.11 as one-half of S.L.M.'s medical bills which Sharon failed to pay, and accrued retroactive child support from Sharon in the amount of $6,909 calculated at the rate of $329 per month from April, 1998, through December 21, 1999. Additionally, the trial court found that Sammy had expended $13,737.64 in support for S.L.M. from April, 1998, until May 11, 1999. From April, 1998, until February 9, 2000 (the effective date of modification of the court-ordered periods of possession of S.L.M.), Sammy had possession of S.L.M. for periods in excess of court ordered periods of possession.

The court entered conclusions of law that Sammy was entitled to offset for actual support he provided during periods of possession in excess of court-ordered possession, as well as for the accrued retroac-

---

**6.** The 1997 order designated Sharon and Sammy as joint managing conservators with each having the right at all times to receive and give receipt for periodic payments for support of the children and to hold or dis-

burse funds for the benefit of the children. Those parts of the 1997 order were not modified by the trial court's order on Sammy's Motion to Modify.

tive child support obligation from Sharon and her half of the uninsured medical expenses. Sammy urges that the findings were supported by evidence; Sharon disagrees.

We agree with Sammy: the record contains documentary evidence supporting the trial court's findings as to actual support by Sammy and the total amount of medical expenses incurred by S.L.M. which the trial court could have relied on to make its findings. Sammy introduced and testified about a document setting out amounts which he actually expended for S.L.M.'s support. He supplied testimony and an affidavit to support the amount and his payment of S.L.M.'s uninsured medical expenses.

■ The amount of $6,909 which was offset for Sharon's retroactive child support obligation in its entirety was less than the $13,737 found by the trial court as a fact to have been Sammy's actual support for S.L.M. and for which Sammy was entitled to an offset. The factual findings of $6,668.11 as Sharon's obligation for uninsured medical expenses and $13,737 for actual support supplied by Sammy yield an offset amount which exceeds the amount Sharon claims as Sammy's arrearage, without allowing offset for any of the $6,909 found as Sharon's retroactive support obligation.[7] If the trial court erred in allowing offset for retroactive child support covering the same period for which Sammy's actual support was supplied, a question which we do not decide, the error

did not probably result in entry of an improper judgment.

■ We disagree that the trial court was limited to allowing Sammy an offset for the difference between the support set by the 1997 order for two children ($762.80 per month) and the reduced amount set for one child ($610.24 per month). The 1997 order did not set separate amounts for each of the two children. Nor did it set an amount for one child except in the event of specified contingencies, none of which occurred. As relevant to this issue, the 1997 order was determinative of the amount of child support Sammy owed, subject to proof of (1) a contingency specified by the order which would change the amount which Sammy was to pay, (2) amounts of support paid and (3) offsets and credits. The trial court did not err in allowing an offset for the full amount of Sammy's child support arrearage measured by the language of its 1997 order which ordered him to pay $762.80 per month, instead of allowing offset for only the amount by which that support obligation would have been reduced had one of the contingencies occurred to change Sammy's child support to $610.24 per month.

In sum, the trial court's 1997 order did not apportion Sammy's child support between the two children as Sharon contends. The amount of Sammy's offset was not limited to the difference between child support ordered for two children and that ordered for one child in the event of contingencies which did not occur. The trial

---

7. Neither party urges a conflict in the findings of fact that Sammy expended $13,737.64 in actual support of S.L.M., Sharon's obligation for child support was $6,909, Sharon's obligation for uninsured medical was $6,668.11, and that Sammy was entitled to offset or credit of $13,577.11. We note that findings of fact occupy the same position as the verdict of a jury. *See McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696 (Tex.1986). We have the duty to reconcile conflicting findings if at all possible. *See Signal Oil and Gas Co. v. Universal Oil Products,* 572 S.W.2d 320, 326 (Tex. 1978); *Rios v. Texas Dept. of Mental Health and Mental Retardation,* 58 S.W.3d 167, 171 (Tex.App.-San Antonio 2001, no pet.). The trial court's findings, did not *limit* Sammy's offset to a particular amount; the findings were of several amounts to which he was entitled to offset or credit.

court made controlling findings of fact as to the amounts of uninsured medical expenses for which Sharon was responsible and actual support Sammy provided to S.L.M. The amounts found for S.L.M.'s uninsured medical expenses and actual support by Sammy were sufficient to support offset of what Sharon contends was Sammy's accrued child support obligation. We conclude that any error by the trial court as urged in issue eight was not such that it probably caused the rendition of an improper judgment, and overrule issue eight.

## ISSUE 9: OFFSET OF ACCRUED CHILD SUPPORT BY UNPAID MEDICAL EXPENSES

By issue nine Sharon asserts that an offset for Sammy's unreimbursed medical expenditures on behalf of S.L.M. should not have been allowed because it was not before the court by any pleadings. We disagree.

Sammy's Answer to the Motion for Enforcement specifically stated that he "has supplied actual support and medical attention" during the periods in excess of court-ordered possession for which he had possession and control of S.L.M. He then pled that he was entitled to an offset for actual support provided during those periods. Sharon did not specially except to his pleadings or object to the trial court that Sammy's pleadings did not support trial of the issue of S.L.M.'s medical expenses. *See* TRCP 90, 91. Evidence as to the cost of and payment for S.L.M.'s medical care was introduced without objection and without claim of surprise by Sharon at each of the three hearings. The trial court, without objection, allowed Sammy to file an affidavit of payment of S.L.M.'s medical expenses following the last hearing.

We conclude that Sammy's pleadings were sufficient basis for the trial court to allow offset for one-half of S.L.M.'s uninsured medical expenses which Sammy paid. We overrule issue nine.

## ISSUE 10: WAGE WITHHOLDING ORDER

By her tenth issue, Sharon claims that the trial court erred in failing to issue a wage withholding order in accordance with Family Code § 154.001[sic]. Sammy's brief specifically disclaims objection to entry of such an order. We sustain issue ten.

## ISSUES 11 AND 12: ATTORNEY'S FEES, COURT COSTS AND INTEREST

Sharon's issues 11 and 12 claim that the trial court erred in failing to award her pre-and post-judgment interest on Sammy's child support arrearage, together with attorney's fees and court costs. She cites Family Code § 157.167 and *In re Marriage of Williams*, 998 S.W.2d 724, 730 (Tex.App.-Amarillo 1999, no pet.) on the issue of attorney's fees and costs. She cites Family Code § 157.265(a) and *Castle v. Harris*, 960 S.W.2d 140, 144 (Tex.App.-Corpus Christi 1997, no pet.) on the issue of interest. She calculates that at $762.80 per month from January 15, 1997, until December 21, 1999, Sammy should have paid a total of $27,079.93 in support. She agrees that he paid $12,204.80. His arrearage, she calculates, was $14,874.60. Based on her assertion in issue eight that Sammy's offset was limited to the difference between the amount of $762.80 specified for two children by the 1997 order, and the amount of $610.82 specified by the order for one child if any of certain contingencies occurred, Sharon contends that Sammy's maximum allowable offset was $2,974.92 for the period from April, 1998, when S.L.M. went to live with Sammy, until December 21, 1999.

Sammy responds that appellant's citations are inapposite. He notes that the trial court's findings of fact and conclusions of law supported the determination that Sammy's offsets exceeded any arrearage. He concludes that because the offsets exceeded any arrearage, the trial court was not required to award attorney's fees and costs to Sharon and did not err by failing to do so.

We agree that the trial court was not required to award attorney's fees and costs to Sharon. In considering Sharon's issue eight, we have previously determined that Sammy's offset was not limited to the difference between the amount of child support set by the 1997 order for two children and the amount set for one child. Thus, the trial court was not precluded from allowing Sammy an offset for the amount of actual support he provided during his periods of possession of S.L.M. in excess of court-ordered periods of possession, and for one-half of S.L.M.'s uninsured medical expenses.

As we discussed in regard to issue eight, the trial court concluded that Sammy was entitled to an offset for Sharon's unpaid one-half of S.L.M.'s uninsured medical expense ($6,668.11) and actual support Sammy provided to S.L.M. during his periods of possession which were in excess of court-ordered periods of possession ($13,737.64). Even disregarding the amount of $6,909 found as Sharon's child support obligation, the trial court's findings of fact support its judgment awarding no arrearage, because Sammy's offset without including the $6,909 totaled $20,405.75 and exceeded the amount of his arrearage which Sharon calculates was $14,874.60. Sharon's calculation includes the three payments prior to March 1, 1997, which we have agreed were improperly excluded from the trial court's calculations, and does not take into account the reduction of Sammy's support effective December 17, 1998, pursuant to the court order on his motion to modify. The trial court specifically found as a fact and concluded as a matter of law that the actual support Sammy paid and one-half of S.L.M.'s uninsured medical should be offset. *See* Family Code §§ 157.006, 157.008. We are to uphold the trial court judgment if the controlling findings of fact support a correct legal theory. *See Hitzelberger v. Samedan Oil Corp.,* 948 S.W.2d 497, 503 (Tex.App.-Waco 1997, writ denied).

The trial court did not err in denying Sharon a judgment against Sammy for accrued child support. In the absence of a judgment for accrued support, the court did not abuse its discretion in failing to award attorney's fees, costs and interest to her. *See* Family Code § 157.167(a). We overrule her issues 11 and 12.

### CONCLUSION

We remand for further proceedings in accordance with Sharon's issue ten, and direct the trial court to cause a wage withholding order to issue as to Sammy's child support obligations. In all other aspects, we affirm the judgment of the trial court.