**Opinion issued December 31, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00687-CV

———————————

**ERIN BROUSSARD, Appellant**

**V.**

**ROY ARNEL, Appellee**

---

**On Appeal from the 328th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 16-DCV-233665**

---

# O P I N I O N

In this suit affecting the parent-child relationship (SAPCR), Erin Broussard

appeals the trial court's modification order designating Roy Arnel sole managing

conservator of their child, I.A. In four issues,[1] Broussard challenges the trial court's order denying her plea to the jurisdiction, arguing that the trial court lacked subject-matter jurisdiction to render its modification order due to I.A.'s emancipation by marriage during the pendency of the modification suit.

We conclude that the trial court did not err in denying Broussard's plea to the jurisdiction, and, accordingly, we affirm the trial court's modification order.

## Background

Broussard and Arnel were divorced after fourteen years of marriage on July 20, 2010. The divorce decree named the parties joint managing conservators of their two minor children, I.A. and K.A., and gave Broussard the exclusive right to designate the children's primary residence.

On July 5, 2016, Arnel filed a petition to modify. The petition, as amended, sought the exclusive right to designate the children's primary residence. Trial began in June 2017, but was continued several times.

On October 22, 2017, while trial was in recess, Broussard reported to her counsel that I.A. had run away. Then on November 6, 2017, Broussard filed a plea to the jurisdiction, informing the court and Arnel that I.A.—who was 15 years old at the time—had traveled to Missouri three days earlier and married a 26-year-old woman. Broussard contended that, as a result of the marriage, I.A. was now

---

[1]   Although Broussard's brief lists five issues, the first and fourth are the same. We have renumbered her issues accordingly.

2

emancipated and thus was no longer subject to her control or the trial court's SAPCR jurisdiction. She acknowledged that the marriage is void under Texas law, but argued she that the trial court should recognize it nonetheless because it is legal and valid under Missouri law, which, at the time, permitted the marriage of a 15-year-old with parental consent. Broussard argued that Missouri law applies to determine the validity of I.A.'s marriage, and, in the alternative, that the trial court should recognize the Missouri marriage under the principles of comity and the Full Faith and Credit Clause of the United States Constitution. *See* U.S. CONST. art. IV § 1.

Arnel filed a response, stating that, at the time of the marriage, the parties were under temporary orders requiring Broussard to consult with him before making significant decisions affecting I.A. He argued that Texas law applies to determine the validity of I.A.'s marriage and asked the trial court to declare the marriage void under Family Code section 6.205, which states that a marriage to which either party is under the age of 18 is void "unless a court order removing the disabilities of minority of the party for general purposes has been obtained in this state or in another state." *See* TEX. FAM. CODE ANN. § 6.205. Arnel argued that because I.A. had not obtained a court order—in Texas or Missouri—removing the disabilities of his minority, he was not legally married under Texas law. *See id.*; *see also id.* § 2.003 ("A person under 18 years of age may not marry unless the

person has been granted by this state or another state a court order removing the disabilities of minority of the person for general purposes."). He also argued that neither comity nor full faith and credit requires recognition of a marriage that is void as against Texas public policy.

On November 30, 2017, the trial court held a hearing on Broussard's plea to the jurisdiction. After hearing argument, the trial court orally denied Broussard's plea and found that the marriage was void. The court issued emergency temporary orders giving Arnel exclusive decision-making authority regarding I.A. and requiring Broussard to cooperate with police in the investigation of I.A.'s whereabouts.

On December 15, 2017, Broussard filed a "motion for reconsideration and new trial" on her plea to the jurisdiction. In it, she stated that she consented to I.A.'s marriage after he contacted her and told her that if she did not consent she would never see him again.

On December 18, 2017, the trial court signed an order denying Broussard's plea to the jurisdiction, declaring I.A.'s marriage void under Texas law and against "good morals and natural justice," and declining to extend the marriage full faith and credit, "as such recognition would be in violation of established Texas public policy."

On January 5, 2018, Broussard filed a mandamus petition with this Court. She argued that the trial court abused its discretion by refusing to recognize I.A.'s Missouri marriage in violation of the principles of comity and by denying her parental right to consent to her son's marriage in violation of the Fourteenth Amendment's Due Process Clause. This Court denied the mandamus petition without substantive opinion on October 16, 2018.

Trial of Arnel's modification suit resumed on April 30, 2018 and concluded on July 2, 2018. On July 3, 2018, the trial court rendered judgment appointing Arnel sole managing conservator and Broussard possessory conservator of I.A.

On July 31, 2018, Broussard filed a motion for new trial, attaching as an exhibit a Missouri circuit court judgment, rendered on February 15, 2018, in a declaratory judgment action brought by I.A.'s wife. The Missouri judgment states that the marriage "entered into on November 3, 2017 was, and continues to remain, valid pursuant to the laws of the State of Missouri, including, but not limited to any and all statutory requirements set forth in Section 451 [Revised Statutes of Missouri] governing the validity of a Missouri marriage." This was the first time Broussard had brought this judgment to the trial court's attention.[2] Broussard argued that the trial court's declaration that the marriage was void violated the Full

---

[2] On March 15, 2018, Arnel filed a post-judgment motion to intervene in the Missouri declaratory judgment action seeking to have the judgment set aside. The Missouri court denied his motion.

5

Faith and Credit Clause of the United States Constitution. Specifically, she argued that she was "attempting to have the Court recognize the marriage—not enforce it—and by recognizing the valid marriage the Court would be required to dismiss the case due to lack of jurisdiction (i.e. it did not have jurisdiction over the Missouri citizen [whom I.A. married])."

Arnel filed a response, arguing, among other things, that the trial court should not consider the Missouri judgment because it was not authenticated. On August 9, 2018, after a non-evidentiary hearing, the trial court orally denied Broussard's motion for new trial.

Broussard appeals the trial court's denial of her plea to the jurisdiction.

## Subject-Matter Jurisdiction

Broussard argues that the trial court erred in denying her plea to the jurisdiction because I.A.'s Missouri marriage divested the trial court of subject-matter jurisdiction. Specifically, she argues that (1) I.A. was emancipated by his Missouri marriage; (2) Texas law does not apply to determine the validity of I.A.'s Missouri marriage; (3) I.A. was married in accordance with Texas law; and (4) Texas must recognize I.A.'s marriage as valid under the Full Faith and Credit Clause of the United States Constitution.

## A. Standard of Review and Applicable Law

A plea to the jurisdiction challenges the subject-matter jurisdiction of the court. If the trial court does not have subject-matter jurisdiction, the court does not have their authority to consider the matter. *Shahin v. Mem'l Hermann Health Sys.*, 527 S.W.3d 484, 487 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). The trial court's ruling on a plea to the jurisdiction is a legal question and is reviewed under a de novo standard of review. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Shahin*, 527 S.W.3d at 487. It is the plaintiff's burden to allege facts that affirmatively establish the trial court's subject-matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *Shahin*, 527 S.W.3d at 487. In determining whether the plaintiff has met this burden, we look to the allegations in the plaintiff's pleadings, accept them as true, and construe them in favor of the plaintiff. *Miranda*, 133 S.W.3d at 226; *Shahin*, 527 S.W.3d at 487. We review the actions of the trial court based upon the materials before it at the time it acted. *Shahin*, 527 S.W.3d at 487.

## B. Emancipation by Marriage

In her first issue, Broussard argues that I.A.'s emancipation by his Missouri marriage rendered Arnel's modification petition moot. Because as designated, Broussard's issues overlap, we will address as her first issue whether I.A.'s Missouri marriage emancipated him.

7

As a preliminary matter, we note that Broussard assumes that I.A.'s alleged emancipation would dispossess the trial court of subject-matter jurisdiction by rendering Arnel's modification suit moot. The mootness doctrine implicates subject-matter jurisdiction, and whether a claim is moot depends on whether a justiciable controversy remains between the parties. *City of Hous. v. Kallinen*, 516 S.W.3d 617, 622 (Tex. App.—Houston [1st Dist.] 2017, no pet.). If a controversy ceases to exist or the parties lack a legally cognizable interest in the outcome, a case is moot. *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642 (Tex. 2005). The same is true when a judgment would not have any practical effect upon a then-existing controversy. *Kallinen*, 516 S.W.3d at 622 (citing *Zipp v. Wuemling*, 218 S.W.3d 71, 73 (Tex. 2007)).

For purposes of this opinion, we will assume without deciding that, under the mootness doctrine, a trial court loses its continuing, exclusive jurisdiction over a petition to modify conservatorship or possession and access when the subject minor is emancipated by marriage, even when, as here, the petition was filed before the minor became emancipated.[3] *See* TEX. FAM. CODE ANN. § 155.003

---

[3] The trial court in a SAPCR has continuing, exclusive jurisdiction over matters concerning conservatorship, possession, and access to a "child," which the Family Code defines as "a person under 18 years of age who is not and has not been married or who has not had the disabilities of minority removed for general purposes." *See* TEX. FAM. CODE ANN. § 101.003(a). Courts have generally held that the trial court's jurisdiction to modify its conservatorship decisions ends upon the occurrence of one of these circumstances—the child turns 18, is married, or is

(court in SAPCR may exercise its continuing, exclusive jurisdiction to modify its prior orders regarding conservatorship, possession, and access to a "child"). The question thus becomes whether I.A.'s Missouri marriage emancipated him.

The answer to this question is found in Family Code section 1.104, which governs emancipation by marriage. Under section 1.104, I.A. could only have been emancipated by his Missouri marriage if that marriage were legal in Texas. *See id.*

emancipated. *See In re D.S.H.*, No. 09-16-00109-CV, 2017 WL 1429198, at *5 (Tex. App.—Beaumont Apr. 20, 2017, no pet.) (mem. op.) ("[B]ecause D.S.H. is now over eighteen years of age, the issue of conservatorship of D.S.H. is moot."); *D.C. v. Te.s Dep't of Family & Protective Servs.*, No. 03-11-00453-CV, 2012 WL 1403333, at *2 (Tex. App.—Austin Apr. 19, 2012, no pet.) (dismissing appeal as moot because there was no longer live controversy once subject of child custody order became adult); *Ngo v. Ngo*, 133 S.W.3d 688, 691–92 (Tex. App.—Corpus Christi 2003, no pet.) (holding that ordinarily, conservatorship becomes moot once child reaches age of eighteen); *In re Rimes*, No. 05-00-01081-CV, 2000 WL 1477212, at *1 (Tex. App.—Dallas Oct. 6, 2000, no pet.) (mem. op.) ("Since the filing of the petition for writ of mandamus, the child has reached the age of 18 years and has become emancipated. Thus, the family court with continuing jurisdiction no longer has jurisdiction."); *Husband v. Pierce*, 800 S.W.2d 661, 663 (Tex. App.—Tyler 1990, no writ) ("A parents' rights and obligations in relation to their child end upon the child's emancipation by marriage."). But some courts have held that if the trial court has subject-matter jurisdiction over a petition to modify conservatorship when it is filed, it does not lose jurisdiction to render judgment on the petition if the child subsequently turns 18 (or, by extension, is married or emancipated). *See In re S.L.M.*, 97 S.W.3d 224, 231–32 (Tex. App.—Amarillo 2002, no pet.) ("To the extent that the trial court had subject-matter jurisdiction as to conservatorship and possession of S.L.M. prior to her 18th birthday, it retained jurisdiction after her birthday to enter orders as to conservatorship and possession for periods prior to S.L.M.'s 18th birthday . . . ."); *McLendon v. Allen*, 752 S.W.2d 731, 733 (Tex. App.—Corpus Christi 1988, no writ) ("In the case before us, the appellant filed the motions setting out grounds for relief prior to the child's eighteenth birthday in the court of original jurisdiction. This was sufficient to invoke the trial court's jurisdiction to hear the motions even though the hearing would have occurred subsequent to the child's eighteenth birthday.").

§ 1.104 (stating that, except as provided by statute or constitution, "a person, regardless of age, who has been married *in accordance with the laws of this state* has the capacity and power of any adult, including the capacity to contract.") (emphasis added); *see also Kingery v. Hintz*, 124 S.W.3d 875, 878 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("Importantly, the Family Code emancipates a minor only after she has been married in accordance with the laws of Texas.").

In Texas, a marriage by a person under 18 years of age who has not obtained "a court order" emancipating him is void. *See* TEX. FAM. CODE ANN. § 6.205; *see also id.* § 2.101 ("A county clerk may not issue a marriage license if either applicant is under 18 years of age, unless each underage applicant shows that the applicant has been granted by this state or another state a court order removing the disabilities of minority of the applicant for general purposes."); *id.* § 2.003(a) ("A person under 18 years of age may not marry unless the person has been granted by this state or another state a court order removing the disabilities of minority of the person for general purposes."); *id.* § 2.009(a)(3)(A) (stating that county clerk may not issue marriage license if either applicant is under 18 years of age and has not presented "a court order granted by this state under [Family Code] Chapter 31 removing the disabilities of minority of the applicant for general purposes"). Indeed, because he was only fifteen years old, I.A. would not even have been

eligible for an emancipation order in Texas. *See id.* § 31.001(a)(2) (minor seeking to remove disabilities of minority must be either 17 years of age or at least 16 years of age and living apart from parents, managing conservator, or guardian).

There is no evidence or argument that, before his marriage, I.A. had obtained—in either Texas or Missouri—a court order removing the disabilities of his minority. I.A. was, therefore, not married in accordance with the laws of Texas and, therefore, was not emancipated. *See id.* § 1.104 (stating that, except as provided by statute or constitution, marriage emancipates person who has been married "in accordance with the laws of this state"); *id.* § 6.205 (marriage by person under 18 years of age who has not obtained "a court order" of emancipation is void).

We overrule Broussard's first issue.

## C.    Emancipation by Application of Missouri Law

In her second issue, Broussard argues that the trial court erred in applying Texas law to determine "the validity of I.A.'s marriage" because Missouri law applies, and I.A.'s marriage, valid under Missouri law, emancipated him.[4]

---

[4]    The Missouri statute that governed at the time of I.A.'s marriage permitted a person 15 years of age with parental consent to obtain a marriage license; that statute has since been amended, raising the permissible age with parental consent from 15 to 16. *See* Mo. Rev. Stat. § 451.090, amended by Act of Aug. 28, 2018, 2018 Mo. Legis. Serv. S.B. 655, § A, 99th Gen. Assem., 2nd Reg. Sess. (Mo. 2018).

11

In effect, Broussard argues that Family Code section 1.104, which compels the conclusion that I.A. was not emancipated by his marriage because it was not valid under Texas law, is inapplicable under a choice-of-law analysis. *See id.* § 1.104.

The problem with this argument is that the issue before us, as Broussard has consistently framed it, is whether I.A. was emancipated by his Missouri marriage. Thus, the validity of the marriage is but a peripheral, or secondary, consideration. Although a conflicts analysis is not necessary here, we briefly address why it would be unavailing to Broussard.

According to Broussard, under the "place of celebration rule," Missouri law applies to determine the validity of I.A.'s marriage because it was undertaken in Missouri. We disagree that the place of celebration rule applies here to compel Texas to recognize a marriage that is void under Texas law. First, the rule has been all but abrogated in favor of the "most significant relationship" test of the Restatement (Second) of Conflict of Laws. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 420–21 (Tex. 1984) (holding that "most significant relationship" test of section 6 of Restatement (Second) of Conflict of Laws applies in Texas in most choice-of-law cases); *see also Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000) ("Texas uses the Restatement's 'most significant relationship' test to decide choice-of-law issues.") (citing *Duncan*, 665 S.W.2d at 421); *In re Estate of*

*Loveless*, 64 S.W.3d 564, 575 (Tex. App.—Texarkana 2001, no pet.) (noting that courts that had traditionally followed place of celebration rule have since applied most significant relationship factors to determine validity of foreign marriage).[5]

In any event, the result is the same regardless of which test is used—we will not apply a Missouri law that sanctions conduct that the Texas legislature has declared to be void because "[t]he basic rule is that a court need not enforce a foreign law if enforcement would be contrary to Texas public policy." *See Larchmont Farms, Inc. v. Parra*, 941 S.W.2d 93, 95 (Tex. 1997) (per curiam); *accord Vanderbilt Mortg. & Fin., Inc. v. Posey*, 146 S.W.3d 302, 316 (Tex. App.—Texarkana 2004, no pet.) ("Texas will not enforce a foreign law which is contrary to Texas public policy."); *Seth v. Seth*, 694 S.W.2d 459, 462–64 (Tex. App.—Fort Worth 1985, no writ) (declining to apply law of Kuwait or India, where marriage and divorce ceremonies occurred, because "harshness" of Islamic

---

[5]     The Restatement (Second) of Conflict of Laws provides that, subject to constitutional restrictions and in the absence of statutory directive, a state will consider the following factors in determining which state's law to apply:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971).

13

law to non-Muslim divorced wife "runs . . . counter to our notions of good morals and natural justice").

Broussard next argues that Texas law does not apply to determine the validity of I.A.'s Missouri marriage because Family Code section 1.103 dictates that Texas law applies "to persons married elsewhere who are domiciled in this state." *See* TEX. FAM. CODE ANN. § 1.103. According to Broussard, "there is no evidence that [I.A.] was domiciled in Texas after the marriage" and "there is evidence that he is currently domiciled in Louisiana." Setting aside the evidentiary issues implicit in this statement,[6] we note that every Texas case that has cited to section 1.103 has done so in the context of determining which state's law to apply to the litigant's marriage or divorce. We do not consider section 1.103 to be applicable beyond determining which state's law governs the rights and duties flowing from a litigant's marriage or divorce; it does not govern the determination whether an out-of-state marriage or divorce affects a Texas court's jurisdiction.

Finally, we note that regardless of which choice-of-law rule or test courts have applied, we have not found a single case holding that the law of another jurisdiction applies to compel a Texas court to recognize a marriage that is void under our laws. *Cf. Braddock v. Taylor*, 592 S.W.2d 40, 42 (Tex. App.—Beaumont

---

[6] For example, Broussard supports her contention that I.A. is currently domiciled in Louisiana by reliance on exhibits offered in support of Arnel's motion to dismiss this appeal that were not offered or admitted in the trial court.

14

1979, writ ref'd n.r.e.) (applying California law to hold that relationship carried on in California was not valid marriage because California does not recognize common law marriage); *Nevarez v. Bailon*, 287 S.W.2d 521, 522–23 (Tex. App.—El Paso 1956, writ ref'd) (applying Mexican law to hold that concubinage relationship carried on in Mexico was not valid marriage).

We overrule Broussard's second issue.

## D.      Emancipation by Recognition of Missouri Declaratory Judgment

In her third issue, Broussard argues (despite having consistently taken the opposite position in the trial court) that I.A.'s marriage is not void under Texas law. More specifically, she asserts that, despite I.A.'s age, his marriage is not void because the subsequent Missouri judgment declaring the marriage valid operated to emancipate him. *See* TEX. FAM. CODE ANN. § 6.205 (stating that marriage of person under 18 years of age is void unless he has obtained "a court order removing the disabilities of minority . . . for general purposes . . . in this state or in another state"). Accordingly, Broussard argues, I.A.'s marriage is entitled to the presumption of validity afforded to all marriages that are not void or voidable, regardless of where they occurred. *See id.* § 1.101 ("[E]very marriage entered into in this state is presumed to be valid unless expressly made void by [Family Code] Chapter 6 or unless expressly made voidable by Chapter 6 and annulled as provided by that chapter."); *Fuentes v. Zaragoza*, 555 S.W.3d 141, 153 (Tex.

15

App.—Houston [1st Dist.] 2018, no pet.) (applying presumption to out-of-state marriages).

We begin by addressing Arnel's assertion that Broussard failed to register the Missouri declaratory judgment as a foreign judgment under Texas's Uniform Enforcement of Foreign Judgments Act (UEFJA), which governs registration and enforcement of out-of-state judgments. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 35.001–.008. Broussard attached the Missouri declaratory judgment as evidentiary support for her motion for new trial on her plea to the jurisdiction. As such, the prerequisites to a UEFJA filing are inapplicable.

Turning to the merits, we begin by observing that we fail to understand how a valid marriage could have sprung from a subsequent declaratory judgment. Issued after the marriage, the Missouri declaratory judgment can have no bearing on the question whether the marriage was valid when it was transacted.

Additionally, the Missouri judgment goes no further than to declare that I.A.'s marriage "was, and continues to remain, valid pursuant to the laws of the State of Missouri." It does not purport to remove the disabilities of I.A.'s minority. Merely confirming that the marriage complied with Missouri law, the declaratory judgment is superfluous, as it evidences little, if anything, beyond what the marriage certificate already shows. Accordingly, we conclude that the Missouri declaratory judgment did not operate to emancipate I.A. *See* TEX. FAM. CODE ANN.

16

§ 1.104 (stating that, except as provided by statute or constitution, marriage emancipates a person who has been married "in accordance with the laws of this state").[7]

We overrule Broussard's third issue.

**E.      Emancipation under the Full Faith and Credit Clause**

In her fourth issue, Broussard argues that the Full Faith and Credit Clause of the United States Constitution mandates that we recognize I.A.'s Missouri marriage, as evidenced by the marriage certificate and the Missouri judgment declaring it valid.

Under the Full Faith and Credit Clause, each state must give a final judgment of a sister state the same force and effect the judgment would be entitled to in the state in which it was rendered. U.S. CONST. art. IV § 1 ("Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state."); *Enviropower, L.L.C. v. Bear, Stearns & Co.*, 265 S.W.3d 16, 19 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ("Under the Full

---

[7]      Having concluded that it did not emancipate I.A., we note, but do not address, Arnel's argument that the Missouri declaratory judgment "has never been authenticated, offered or admitted as evidence before the Texas trial court." *See* TEX. R. EVID. 901(b) (governing authentication requirement); TEX. R. EVID. 902 (identifying certain evidence as self-authenticating); 28 U.S.C. § 1738 (dictating manner of proving records of judicial proceedings of other states and providing that copies of such proceedings, when properly authenticated, "shall have . . . full faith and credit in every court within the United States").

Faith and Credit Clause, a state must give the same force and effect to a judgment of a sister state that it would give to its own judgments.").

With regard to the marriage itself, evidenced by the marriage certificate, Broussard has not provided authority supporting her argument that the Full Faith and Credit Clause requires states to recognize and enforce out-of-state marriages; the cases she cites concern divorce decrees and annulment orders, which, unlike marriage certificates, represent matters that have been adjudicated by a court.[8] *See, e.g., Trammell v. Trammell*, 290 S.W.2d 324, 327 (Tex. App.—Waco 1956, writ ref'd n.r.e.) ("The decree of the California court annulling the plaintiff's marriage with Mosier is res judicata between the parties and is unassailable collaterally, and must be accorded full faith and credit in Texas."); *Keller v. Nevel*, 699 S.W.2d 211, 211 (Tex. 1985) (holding that New Hampshire divorce decree was entitled to full

---

[8] Broussard references two additional cases that do not advance her argument: she cites *Loughran v. Loughran*, 292 U.S. 216, 223 (1934) for its statement that "[m]arriages not polygamous or incestuous, or otherwise declared void by [the foreign state's] statute, will, if valid by the law of the state where entered into, be recognized as valid in every other jurisdiction," but this only serves to undercut her argument because, as discussed *supra*, Texas law voids underage marriages, *see* TEX. FAM. CODE ANN. § 6.205 (stating that marriage of person under 18 years of age is void unless he has obtained "a court order removing the disabilities of minority . . . for general purposes . . . in this state or in another state"); and she cites *Prigg v. Commonwealth of Pennsylvania*, 41 U.S. 539, 674 (1842) for the proposition that "[t]he marriage of a minor in Delaware, good by the law of that state, would be good everywhere else," but *Prigg*, which held that a federal law requiring the return of fugitive slaves (the Fugitive Slave Act of 1793) invalidated Pennsylvania's scheme for recovery of fugitive slaves, is wholly inapplicable to the facts and issues presented in this case.

faith and credit where laws of state of New Hampshire were properly before court pursuant to wife's motion to take judicial notice).

Finally, with regard to the Missouri declaratory judgment, we reiterate our holding above—even if the Full Faith and Credit Clause compels us to recognize it, the judgment merely declares that I.A.'s marriage complied with Missouri law; it does not purport to emancipate him and thus fails to validate his marriage under Texas law. *See* TEX. FAM. CODE ANN. § 6.205 (providing that marriage by person under 18 years of age who has not obtained "court order" of emancipation is void).

We overrule Broussard's fourth issue.

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Chief Justice Radack and Justices Keyes and Hightower.