**Teddy HUSBAND, Relator,**

v.

**The Honorable Jack PIERCE, Judge, 145th Judicial District Court, Nacogdoches County, Texas, Respondent.**

**No. 12–90–00173–CV.**

Court of Appeals of Texas, Tyler.

Nov. 30, 1990.

Paul Tatum, Nacogdoches, for relator.

Tim James, Nacogdoches, for respondent.

COLLEY, Justice.

In this cause, Teddy Husband, Relator, seeks the writ to compel Respondent, The Honorable Jack Pierce, District Judge (hereinafter Judge Pierce), to vacate his order of March 30, 1990,[1] entered in trial court cause number 5838–90–3 on the docket of the 145th Judicial District Court of Nacogdoches County, Texas, ordering Relator to "deliver ... Rana Leigh Holt [Husband] [hereinafter Rana] into the possession of Respondents Robert and Linda Holt [hereinafter referred to collectively as the Holts or Holts]...."

Because we are persuaded that Judge Pierce abused his discretion in issuing the order, we will conditionally grant the writ of mandamus sought by Relator.

The Holts filed an application for a writ of habeas corpus alleging that they are the parents of Rana Leigh Holt and that possession of the child is not governed by a court order. They further alleged that the child was illegally restrained by Relator. The application was filed on March 6, 1990. A hearing on the application was set for March 14, 1990. On March 13, 1990, Relator filed his answer to the application alleging that Rana Leigh Holt was his wife and that she therefore was emancipated.

Judge Pierce held a hearing on the application on March 14.[2] Mrs. Holt testified that she and Robert Holt were the parents of Rana Leigh Holt, and that Rana had turned fifteen years of age on September 6, 1989. According to Mrs. Holt, on December 15, 1989, Rana was reported missing from school. She had not spoken with Rana since that time. Mrs. Holt testified that she had never given consent for Rana to marry or live with anyone else. On cross-examination, Mrs. Holt said that she had talked to her daughter who asked Mrs. Holt to leave her alone. She admitted that Rana and Relator were representing them-

---

1. Issued in a habeas corpus proceeding instituted by the Holts pursuant to Tex.Fam.Code Ann. § 14.10 (Vernon Supp.1990). The Holts are the natural parents of Rana, a 15–year–old female, and Relator is the alleged husband of Rana. All references in this opinion to sections are to the Texas Family Code unless otherwise noted.

2. Initially the hearing was also to cover the Holts' petition to annul the marriage of Relator and Rana, which petition was served on Relator as he entered the courtroom for the hearing. After the hearing was completed, the trial court severed the annulment action. The annulment action is not before this Court.

selves as being married, that Rana was using Relator's name at school and was holding herself out as Relator's wife.

Relator testified that on December 15, 1989, he went to Houston, Texas, and purchased airline tickets to Laredo, Texas. Rana met him at the airport at about 10:00 a.m. They flew to Laredo and went across the border to Mexico. He and Rana obtained a marriage license in Mexico and went before a legal official who married them. A document, that Relator testified was the marriage certificate given them in Mexico, was admitted into evidence. The document was written in Spanish. A translation of the document was also admitted into evidence. The marriage certificate translation lists Rana's age as "15." Relator also testified that he sought the Holts' consent to marry Rana but that they refused.

Rana also testified. She testified that on December 15, she went to Houston to meet Relator with the intention of going to Mexico to get married. According to Rana, she and Relator went before authorities in Mexico and told them they wanted to get married. They told the authorities her age and a ceremony was performed. She testified that there was a translator present. Rana said that they returned to San Augustine where they lived as a married couple and considered themselves married.

■ Under the Texas Family Code, a marriage by a person at least fourteen but not eighteen years of age is voidable and subject to annulment. § 2.01 (Vernon 1975) (hereafter § 2.01). The validity of a marriage is generally determined by the law of the place where it is celebrated. *Nevarez v. Bailon,* 287 S.W.2d 521, 523 (Tex.Civ.App.—El Paso 1956, writ ref'd); *Williams v. Home Indem. Co.,* 722 S.W.2d 786, 787 (Tex.App.—Houston [1st Dist.] 1987, no writ).

Relator contends that the proof offered to the trial court established that a marital relationship exists between himself and Rana and that she no longer suffers under the disabilities of a minor. The evidence offered to the trial court, uncontradicted as it is, shows a marital relationship between Relator and Rana. The certificate, together with the translation admitted into evidence, constitutes undisputed evidence of the ceremonial marriage. *See Wood v. Paulus,* 524 S.W.2d 749, 757 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.). The testimony of Relator and Rana further shows that a ceremonial marriage took place. Additionally, there is undisputed evidence of an informal common-law marriage in this State. Relator and Rana agreed to be husband and wife, they have lived together in Texas as husband and wife, and after the agreement, they held themselves out to the public as husband and wife. *See* § 2.41(b) (Vernon Supp. 1990)[3] (hereinafter § 2.41).

■ Under Texas law, a minor who "has been married in accordance with the laws of this state, ... has the power and capacity of an adult." § 4.03 (Vernon 1975) (hereinafter § 4.03). A parents' rights and obligations in relation to their child end upon the child's emancipation by marriage. *See Ex parte Williams,* 420 S.W.2d 135, 137 (Tex.1967).

■ The core issue in this case is whether a 15–year–old minor who has entered into a marriage without parental consent or a court order is emancipated so as to preclude her forcible return to her parents by writ of habeas corpus.

The Holts argue that the language in § 4.03 requiring a marriage to be "in accordance with the laws of this state" means that because Rana could not have obtained a marriage license in this state that she was not emancipated by the Mexican marriage. Certainly no county clerk in the State of Texas could have lawfully issued a marriage license to Rana without her parents' consent or a court order. §§ 1.51, 1.52 and 1.53 (Vernon Supp.1990). Nor could a county clerk have certified or

---

**3.** Section 2.41(b) reads in pertinent part: "The licensed or informal marriage of a person 14 years of age or older but under 18 years of age, without parental consent as provided in Section 1.52 or 1.92 of this code or without a court order as provided by Section 1.53 of this code, is *voidable and subject to annulment on the petition ... of the parent....*" (Emphasis ours.)

recorded a declaration of informal marriage for Rana. § 1.94(b)(2) (Vernon 1975).

The undisputed facts show, as a matter of law, that a marital relationship exists between Relator and Rana, subject only to annulment under § 2.01 (Vernon 1975). Unless and until that marriage is annulled, Rana is not a child whose possession can be obtained by the Holts under the summary proceedings prescribed by the provisions of § 14.10 (Vernon 1990) (hereinafter § 14.10). Rana was emancipated at the time the court's order was signed. *Ex parte Williams;* §§ 2.41(b) and 4.03.

We reject the Holts' arguments that the provisions of § 4.03 that a marriage be entered into "in accordance with the laws of this state," precludes Rana's emancipation because she was married in Mexico, and because of her age, no marriage license authorizing her marriage could have been issued without the Holts' consent; and that no clerk in this state was authorized, for the same reasons, to record a declaration of her informal or common-law marriage to Relator. § 1.94(b)(2) (Vernon 1975). Those arguments do not take into account the public policy established by the legislature that a marriage entered into by an underage (14 years of age or older but less than 18 years of age) party is voidable, not void. See §§ 2.41(b) and 2.01.

Sections 2.21 and 2.22 (Vernon 1975) and (Vernon Supp.1990) combine to define what marriages are *void* in Texas. Neither of those sections declares that a marriage by a person who is over the age of 14, but less than 18 years of age, is void. Indeed the provisions of chapters 1 and 2 of Title 1 of the current Texas Family Code, already discussed, clearly demonstrate that both the unlicensed Mexican ceremonial marriage and the informal common-law marriage of Relator and Rana are *voidable* only. The public policy expressed in § 2.01 is that "every marriage entered into in this state is considered valid ... unless it is *expressly* made *voidable* by this chapter

[chapter 2] and *is annulled* as provided by this chapter." (Emphasis ours.)

■ After a careful review of the applicable provisions of the Texas Family Code, we conclude that even in the absence of a valid marriage license authorizing a marriage ceremony, whether conducted by a person authorized by § 1.83 (Vernon Supp.1990) or not, is nevertheless valid "if there was a reasonable appearance of authority by that person, and at least one party to the marriage participated in the ceremony in good faith and that party treats the marriage as valid." § 2.03 (Vernon 1975). Moreover, it is noteworthy that historically, that is, from 1836 to the present date, Texas law has never mandated any particular vows, oaths, or other responses in the marriage ceremony. *Smith v. Smith,* 1 Tex. 621 (1846); *Rice v. Rice,* 31 Tex. 174 (1868); *cf. Coulter v. Melady,* 489 S.W.2d 156 (Tex.Civ.App.–Texarkana 1972, writ ref'd n.r.e.).

■ For the reasons already expressed, the validity of a common-law marriage does not depend on the formal declaration thereof as provided for by § 1.92(a) and (b) (Vernon 1975) and (Vernon Supp. 1990), even though such declaration does constitute a prima facie showing of the union. § 1.94(d) (Vernon 1975). In this case, even if we be in error in concluding that the Mexican ceremonial marriage was established, the common-law or informal marriage of Relator and Rana was established as a matter of law, and that marriage is, under the law valid unless it is annulled by judicial decree. Rana's age does not constitute any impediment to her common-law union with Relator as the Holts argue. The authorities [4] cited by them in support of their "legal impediment" arguments are inapposite.

Also, those same arguments are untenable in light of the applicable rule expressed in *Portwood v. Portwood,* 109

---

**4.** Dicta quoted in *Kissick v. Garland ISD,* 330 S.W.2d 708 (Tex.Civ.App.–Dallas 1959, writ ref'd n.r.e.); *Howard v. Howard,* 459 S.W.2d 901 (Tex.Civ.App.–Houston [1st Dist.] 1970, no writ), involved the statutorily declared impediment of

a pre-existing marriage; *Franklin v. Smallridge,* 616 S.W.2d 655 (Tex.Civ.App.–Corpus Christi 1981, no writ), also involved a pre-existing marriage.

S.W.2d 515, 522 (Tex.Civ.App.–Eastland 1937, writ dism'd, w.o.j.), *reaff'd in Williams v. White,* 263 S.W.2d 666, 668 (Tex.Civ.App.–Austin 1953, writ ref'd n.r. e.). That rule is as follows:

> In keeping with [public policy] our courts have held that statutes regulating the mode of entering into the marriage relation including the consent of parents and provisions requiring that a license be obtained before performance of the marriage ceremony, are *merely directory,* and that, although marriage is entered into otherwise than in accordance with the provisions of such statutes, it is nevertheless a valid marriage unless ... the statute declares that its violation shall render the marriage *void.*

*Portwood,* 109 S.W.2d at 522, and *Williams,* 263 S.W.2d at 668 (citation omitted) (emphasis ours).

We conclude that Judge Pierce had a legal duty to deny the Holts' application for the writ of habeas corpus under § 14.10. Therefore Judge Pierce in granting that writ, and the relief sought thereby, clearly abused his discretion.

Since no appeal lies from the trial court's order, *Gray v. Rankin,* 594 S.W.2d 409 (Tex.1980), our exercise of mandamus jurisdiction under Tex.Gov't Code Ann. § 22.221(b) (Vernon 1988) is appropriate.

We grant Relator's petition, but the writ of mandamus will not be issued by the Clerk of this Court unless Judge Pierce fails to vacate his order within ten days from the date of this opinion.