**Nicholas B. CREEL, M.D. and Nicholas B. Creel, M.D., P.A., Appellants,**

v.

**Frank MARTINEZ, Jr., Appellee.**

No. 01–02–01065–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 9, 2004.

Rehearing Overruled March 9, 2005.

Barbara Hilburn, Steven O. Grubbs, Curtis W.W. Fitzgerald II, Hilburn, Shores & Sherer, P.L.L.C., Houston, TX, for Appellants.

Gordon E. Davenport, Davenport Law Firm, Alvin, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices BLAND and CHRISTOPHER.*

* The Hon. Tracy Christopher, Judge of the 295th Judicial District Court, Harris County, Texas, participating by assignment.

## OPINION

SHERRY RADACK, Chief Justice.

In this appeal, we determine whether 17–year–old Holly Denise Orchard could be survived by a common-law spouse when she died. To decide this issue, we consider the constitutionality of section 2.401(c) of the Family Code, which prohibits a minor from being a party to a common-law marriage. We also consider whether the trial court lacked jurisdiction to proceed because the attorney general had not been notified of the constitutional challenge to the validity of section 2.401.

## BACKGROUND

Holly Denise Orchard was born on February 20, 1980. On November 26, 1997, Holly gave birth to Austin Reece Martinez. Tragically, she died two weeks later on December 13, 1997, at the age of 17. On November 24, 1999, Frank Martinez, Jr., in both his individual capacity and as next friend of Austin, filed a lawsuit against Dr. Nicholas Creel, M.D. for alleged acts of medical negligence relating to Holly's death.

On December 13, 1999, Frank filed an application to determine heirship, claiming that he was Holly's common-law spouse when she died. The trial court consolidated the medical malpractice lawsuit and the application to determine heirship and abated the medical malpractice action until it determined the matter of heirship.

Creel intervened in the heirship matter and moved for summary judgment, contending that section 2.401(c) of the Texas Family Code,[1] which became effective on September 1, 1997, before Frank filed his application to determine heirship, prevented Frank from asserting claims in his individual capacity based on his purported status as Holly's common-law husband. Frank responded that section 2.401(c) is unconstitutional because he and Holly were parties to a valid common-law marriage before the statute became effective, and applying the statutory prohibition in this case would have the effect of "divorcing" the couple on the effective date of the statute. Such an interpretation, he contends, deprives him of his "vested rights." The trial court denied Creel's motion for summary judgment.

The heirship matter proceeded to trial. In a motion for directed verdict, at the jury charge conference, and in a motion for new trial, Creel continued to assert that section 2.401 barred any legal recognition of Holly's and Frank's marriage. The trial court, nevertheless, submitted the case to the jury. The jury found that Holly and Frank were common-law married on July 24, 1997, before section 2.401(a) became effective on September 1, 1997.

## CONSTITUTIONALITY OF FAMILY CODE SECTION 2.401(C)

Creel contends that the trial court erred in holding that section 2.401(c) of the Fam-

---

1. Section 2.401 of the Texas Family Code provides in relevant part:

 (a) In a judicial, administrative, or other proceeding, the marriage of a man and woman may be proved by evidence that:
 (2) the man and woman agreed to be married and after the agreement they lived together in this state as husband and wife and there represented to others that they were married.
 (c) A person under 18 years of age may not:

 (1) be a party to an informal marriage; or
 (2) execute a declaration of informal marriage under Section 2.402.
 TEX. FAM.CODE ANN. § 2.401(a), (c) (Vernon 1998).
 The minimum age requirement in subsection (c) of the statute above was added by the legislature in 1997 and went into effect September 1, 1997. Act of May 26, 1997, 75th Leg., R.S., ch. 1362, § 1, 1997 Tex. Gen. Laws 5113.

ily Code is unconstitutional as applied to Frank and Holly. To resolve this issue, we decide two questions: (1) First, did prior law permit a 17–year–old to be a party to a common-law marriage? (2) Second, does the retroactive application of section 2.401(c) deprive Frank of a "vested right" so as to render the statute unconstitutional as applied to him?

**1. Did prior law permit a 17–year–old to be a party to a common-law marriage?**

 Texas law recognizes two forms of marriage—ceremonial and common law. *Johnson v. State,* 103 S.W.3d 463, 463 (Tex.App.-San Antonio 2003, no pet.). A ceremonial marriage requires parental consent for a person more than 14 years old, but less than 18 years old, at the time of the marriage. *Husband v. Pierce,* 800 S.W.2d 661, 663 (Tex.App.-Tyler 1990, no pet.); TEX. FAM.CODE ANN. § 2.102 (Vernon 1998). However, parental consent was not required to prove a common-law marriage, before the enactment of section 2.401(c). *See Johnson,* 103 S.W.3d at 463. Instead, an underaged party to the marriage rendered the marriage voidable. *See Husband,* 800 S.W.2d at 664; *see also* TEX. FAM.CODE ANN. § 6.102(a) (Vernon 1998) ("The court may grant an annulment of a licensed or informal marriage of a person 14 years of age or older but under 18 years of age that occurred without parental consent or without a court order ..."); *see also* Op. Tex. Att'y Gen. No. M–502 (1969).

Thus, as of July 24, 1997—the date the jury concluded that Holly and Frank's common-law marriage began—it was permissible for a 17–year–old to enter into a common-law marriage. Such a marriage, however, remained voidable until the minor either died or reached the age of majority. *See* TEX. FAM.CODE ANN. § 6.102 (Vernon 1998) (providing grounds for annulling marriage of a person between the ages of 14 and 18); TEX. FAM.CODE ANN. § 6.103 (Vernon 1998) (prohibiting underage annulment after reaching the age of 18); TEX. FAM.CODE ANN. § 6.111 (Vernon 1998) (prohibiting annulment of voidable marriage after death of either party to marriage).

**2. Does the retroactive application of section 2.401 deprive Frank of "vested rights"?**

Deferring to the jury's factual finding that Holly and Frank were common-law married as of July 24, 1997, we consider what effect, if any, the Legislature's enactment of section 2.401(c) had on that marriage, occurring, as it did, before Holly reached majority and before her death. Frank argues that section 2.401(c) should not be applied to this case, because a retroactive application of the statute serves to "divorce" him from Holly on the effective date of the statute.

 The Texas Constitution provides, "No ... retroactive law ... shall be made." TEX. CONST. art. I, § 16. This constitutional proscription is, however, limited to "vested rights." *See Subaru of America, Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 219 (Tex.2002); *City of Dallas v. Trammell,* 129 Tex. 150, 101 S.W.2d 1009, 1014 (1937). If a statute impairs or takes away vested rights, it may not be made retroactive. TEX. CONST. art. I, § 16; *Merchants Fast Motor Lines, Inc. v. Railroad Comm'n,* 573 S.W.2d 502, 504 (Tex.1978); *Reames v. Police Officers' Pension Bd. of City of Houston,* 928 S.W.2d 628, 631 (Tex.App.-Houston [14th Dist.] 1996, no writ). Unless vested rights are destroyed or impaired, however, a law is not invalid even though retroactive in operation. *Corpus Christi People's Baptist Church, Inc., v. Nueces County Appraisal Dist.,* 904 S.W.2d 621, 626 (Tex. 1995).

A "vested right" implies an immediate right or an entitlement—it is not one based upon a mere expectation or a contingency. *Houston Indep. Sch. Dist. v. Houston Chronicle Publ'g Co.*, 798 S.W.2d 580, 589 (Tex.App.-Houston [1st Dist.] 1990, writ denied). In *Mellinger v. City of Houston*, the Texas Supreme Court described "vested rights" as follows:

> [I]t must necessarily be held that a right, in a legal sense, exists, when in consequence of the existence of given facts, the law declares that one person is entitled to enforce against another a given claim, or to resist the enforcement of a claim urged by another. *Facts may exist out of which in the course of time or under given circumstances, a right would become fixed or vested by operation of existing law, but until the state of facts which the law declares shall give a right comes into existence there cannot be in law a right; and for this reason it has been constantly held that, until the right becomes fixed or vested, it is lawful for the law-making power to declare that the given state of facts shall not fix it,* and such laws have been constantly held not to be retroactive in the sense in which that term is used.

68 Tex. 37, 3 S.W. 249, 253 (Tex.1887) (emphasis added).

Similarly, in *Ex parte Abell*, the Texas Supreme Court observed:

> [A] right cannot be considered a vested right unless it is something more than such a mere expectation as may be based upon an anticipated continuance of the present general laws; it must have become a title, legal or equitable to the present or future enjoyment of a demand or a legal exemption from the demand made by another.

613 S.W.2d 255, 261 (Tex.1981). When the authority granting the right has the power and discretion to take that right away, the right cannot be said to be vested. *Id.* at 262; *Grocers Supply Co., Inc. v. Sharp*, 978 S.W.2d 638, 643 (Tex.App.-Austin 1998, pet. denied).

Creel contends that, as of the effective date of section 2.401(c), Frank had no vested right arising from his common-law marriage to a minor. We agree.

Frank does not dispute that, on September 1, 1997, his common-law marriage to Holly marriage was legal, but voidable, because Holly had not yet reached the age of 18. He contends, however, that a marriage that is voidable because of the minority of one of the participants nonetheless creates vested rights in the participants, as well as against third parties. We disagree.

To create a vested right, one of two events had to occur to "fix" Frank and Holly's right to remain married—either Holly's reaching the age of majority or the death of Frank or Holly. *See* TEX. FAM. CODE ANN. §§ 6.103 & 6.111. None of these events occurred before the effective date of section 2.401(c) of the Family Code. Frank and Holly's right to remain married, thus, had not become "fixed" or "vested," and the Legislature's enactment forbidding minors to be a party to a common-law marriage rendered whatever contingent expectations Frank had for the common-law marriage a nullity, as surely as if one of the parties, or the parents of the underaged participant, had sought to avoid it. The Legislature, which possesses the authority to grant the right to be married, retains the power to define the parameters of a marriage, as well as to further condition any existing, but voidable, marriage. *See Abell*, 613 S.W.2d at 262.

To that end, we find *Beck v. Beck*, 814 S.W.2d 745 (Tex.1991), to be informative. In *Beck*, the husband and wife entered into a prenuptial agreement to maintain sepa-

rate property and to keep the income of such separate property separate. *Id.* at 746. The court held that the contract was voidable, but not void. *Id.* at 748. The husband claimed that the retroactive application of a statute permitting such prenuptial agreements was unconstitutional because he had a vested community property right in the income from the wife's separate property, which arose by operation of law when they married. *Id.* at 746. The court held that, because the wife held a voidable interest in the prenuptial agreement, the husband's community property rights had never "vested." *Id.* at 748. Just as the wife's voidable interest in the prenuptial agreement prevented the husband's community property rights from ever vesting, we conclude that Frank's and Holly's voidable marriage failed to create any vested protection from a change in the law regarding informal marriages to minors. Until their marriage was no longer voidable—either through Holly's reaching the age of majority or the death of either party—the Legislature was free to change the terms and conditions under which they could remain married.

Therefore, we hold that section 2.401(c) of the Family Code, as applied to the facts present here, is not an unconstitutional retroactive law. As such, the trial court erred by denying Creel's motions for summary judgment and for directed verdict. Accordingly, we sustain points of error one and two.

### JURISDICTION OF THE TRIAL COURT

In point of error three, Dr. Creel, relying on section 37.006(b) of the Texas Civil Practices and Remedies Code, contends that the trial court did not have jurisdiction because the Attorney General was not given notice of the constitutional challenge to section 2.401(c). Section 37.006(b) provides as follows:

*In any proceeding that involves the validity of a municipal ordinance or franchise, the municipality must be made a party and is entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard.*

TEX. CIV. PRAC. & REM.CODE ANN. § 37.006(b) (Vernon 1997) (emphasis added). This case does not involve the validity of a municipal ordinance or franchise. Therefore, section 37.006(b) does not apply.

Accordingly, we overrule point of error three.

### CONCLUSION

Because we have determined that the trial court erred by declaring Frank Martinez, Jr., an heir of the estate of Holly Denise Orchard, we reverse the judgment of the trial court and remand the case for further proceedings. Because we have held that Frank Martinez, Jr., individually, has no interest in the estate of Holly Denise Orchard, we need not address Dr. Creel's remaining issues on appeal, and decline to do so.