Opinion issued March 9, 2023



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-21-00624-CV

———————————————

## SANDRA L. MCGARRY, Appellant

## V.

## THE HOUSTON FIREFIGHTERS' RELIEF AND RETIREMENT FUND, BRETT ROBERT BESSELMAN IN HIS CAPACITY AS CHAIR OF THE BOARD OF TRUSTEES OF THE HOUSTON FIREFIGHTERS' RELIEF AND RETIREMENT FUND, AND THE BOARD OF TRUSTEES OF THE HOUSTON FIREFIGHTERS' RELIEF AND RETIREMENT FUND, Appellees

On Appeal from the 61st District Court
Harris County, Texas
Trial Court Case No. 2020-80333

## O P I N I O N

Sandra L. McGarry sued the Houston Firefighters' Relief and Retirement

Fund, the Fund's board of trustees, and the chairman of the Fund's board of trustees,

claiming she is entitled to pension benefits earned by her deceased husband. The Fund and the other two defendants filed pleas to the jurisdiction, requesting dismissal of McGarry's claims, which the trial court granted. McGarry appeals.

We reverse and remand.

## BACKGROUND

### McGarry's Lawsuit

McGarry sued the Fund, its board of trustees, and the chairman of the board of trustees, seeking a declaratory judgment and asserting multiple other causes of action. In her petition, McGarry alleged that she and James Joseph McGarry, a retired firefighter who died a day after retiring in April 2018, had entered into a common-law or informal marriage in July 2016. As the widow of a deceased firefighter, McGarry contacted the Fund to apply for survivor's benefits (a portion of James's pension benefits to which she is entitled as his widow). According to McGarry, the Fund refused to allow her to apply unless and until she first obtained a court judgment recognizing that she had been informally married to James.

McGarry obtained such a judgment in a contested heirship proceeding pending in one of Montgomery County's courts at law. The judgment recited that she had been informally married to James in July 2016, their informal marriage continued until his death in April 2018, and their informal marriage met the

requirements set forth in section 2.401 of the Texas Family Code, which is the statute that specifies the evidence needed to prove the existence of an informal marriage.

Once McGarry had this judgment, the Fund allowed her to apply for survivor's benefits. She alleged, however, that after she had applied for benefits but before the Fund acted on the application, the Fund's board of trustees revised the policies and procedures applicable to proof of an informal marriage. In particular, the Fund now required that any judgment recognizing an informal marriage had to be rendered by a Texas district court and also had to be submitted to the Fund before a member's death to be valid proof of an informal marriage. Because James had died beforehand, McGarry could no longer qualify for survivor's benefits because she could not supply the required proof (a district-court judgment recognizing the marriage that had been submitted to the Fund before James's death). Under the circumstances, the Fund notified McGarry that it regarded her application for survivor's benefits as incomplete and thus would not consider her application.

McGarry requested that the trial court enter a judgment declaring that:

- the county court at law's judgment is valid and enforceable;

- she and James had been informally married under Texas law; and

- the county court at law's judgment recognizing her informal marriage to James is sufficient proof to require the Fund to process her application.

In addition, McGarry sought several other declarations regarding her rights as a survivor or any additional rights she had with respect to James's pension, the validity

3

and enforceability of the Fund's revised application policies and procedures, and the validity and enforceability of the Fund's enabling statute to the extent that statute allowed the Fund to adopt the application policies and procedures it had adopted.

McGarry further alleged that the Fund and the other two defendants had violated her constitutional rights to due process and equal protection by infringing on and unduly burdening her fundamental marriage rights. She further alleged that the board of trustees and its chairman had committed *ultra vires* acts—acts beyond their legal power or authority—by revising the Fund's application policies and procedures after she had already applied and retroactively applying the revised policies and procedures to her and also by refusing to process her application and thus depriving her of a final benefits decision that she could appeal in court.

McGarry also alleged claims for breach of contract and conversion. As damages, she sought the amount of pension benefits she alleged she was owed.

Finally, McGarry sought a writ of mandamus, requesting that the trial court compel the Fund and the other two defendants to process her application.

**Defendants' Jurisdictional Pleas**

The Fund filed a plea to the jurisdiction, arguing that it generally possessed governmental immunity and therefore was not subject to most of McGarry's claims. According to the Fund, its enabling statute waives the entity's governmental immunity solely with respect to final benefits decisions. Because McGarry was not

4

a member or member's beneficiary and thus not entitled to a benefits decision, the Fund argued, its governmental immunity had not been waived under the statute.

In addition, to the extent a justiciable controversy existed between the parties, the Fund argued it had exclusive jurisdiction over the controversy. Because McGarry had not exhausted her administrative remedies by complying with the Fund's revised application policies and procedures, the Fund argued, the district court lacked subject-matter jurisdiction and could not entertain any controversy until McGarry had exhausted her administrative remedies by obtaining a final benefits decision.

The Fund's board of trustees and its chairman, Besselman, filed jurisdictional pleas that, for the most part, were materially indistinguishable from the Fund's.

In conjunction with their jurisdictional pleas, the Fund and the other two defendants filed a motion to dismiss that elaborated upon their jurisdictional claims.

### Trial Court's Ruling

The trial court granted the defendants' jurisdictional pleas and dismissed McGarry's claims. The trial court did not specify a basis for its jurisdictional ruling.

### McGarry's Motion for New Trial

McGarry moved for a new trial. She argued that the trial court erred in dismissing all of her claims for lack of subject-matter jurisdiction because:

- she should have received an opportunity to replead before dismissal;
- she had a claim for violation of her due-process rights based on the Fund's refusal to even process or hear her application for survivor's benefits;

5

- the defendants' revised application policies and procedures violated the Fund's enabling statute or else the statute itself is unconstitutional; and

- the defendants' refusal to recognize her informal marriage to James unconstitutionally abrogated her fundamental marriage rights.

McGarry's new-trial motion was denied by operation of law.

## DISCUSSION

### Standard of Review

Because subject-matter jurisdiction is a question of law, we review a trial court's ruling on a plea to the jurisdiction de novo. *Nettles v. GTECH Corp.*, 606 S.W.3d 726, 731 (Tex. 2020). When, as here, a jurisdictional plea challenges the pleadings, we must decide whether the plaintiff has pleaded facts that affirmatively demonstrate the trial court's jurisdiction to hear her claims. *Tex. Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020). In deciding whether the plaintiff has met this burden, we liberally construe the plaintiff's pleadings, taking all factual allegations as true and looking to the plaintiff's intent. *Id.* If the plaintiff has not pleaded sufficient facts to affirmatively demonstrate jurisdiction and her pleadings do not affirmatively demonstrate incurable jurisdictional defects either, the trial court must allow the plaintiff an opportunity to replead her claims. *Dohlen v. City of San Antonio*, 643 S.W.3d 387, 397 (Tex. 2022). But if her pleadings demonstrate incurable jurisdictional defects, the trial court must dismiss her claims. *See id.*

## Applicable Law

The Texas Constitution authorizes the Legislature to create pension systems for public employees. TEX. CONST. art. XVI, § 67(a). The Legislature created the Fund via a comprehensive, standalone statute. TEX. CIV. STAT. art. 6243e.2(1).

Under the Fund's enabling statute, it is governed by a board of trustees and any committees established by the board. *Id.* § 2(b), (h-1). The board "shall receive, manage, and disburse the fund for the municipality and shall hear and determine applications for retirement and claims for disability and designate the beneficiaries or persons entitled to participate." *Id.* § 2(k). Decisions made by the board are "final and binding as to each affected member and beneficiary, subject only to the rights of appeal specified" in the statute itself. *Id.* § 2(j); *see also id.* § 2(h-2) (providing that if board establishes pension-benefits committee, then pension-benefits committee's decisions are final and binding, except to extent its decisions may be appealed to full board, subject only to rights of appeal specified in statute).

The statute gives the board broad powers of self-governance. Among other things, the board's powers include the authority to "adopt for the administration of the fund written rules, policies, and procedures not inconsistent" with the statute. *Id.* § 2(p)(1). Any rule, policy, or procedure the board adopts "is final and binding with respect to any matter within the board's jurisdiction and authority." *Id.* § 2(p-1).

In addition to granting the board rulemaking authority, the statute empowers the board to "interpret and construe" the statute itself; "correct any defect, supply any omission, and reconcile any inconsistency" in the statute "in a manner and to the extent that the board considers expedient to administer" the statute "for the greatest benefit of all members"; and "determine all questions, whether legal or factual, relating to eligibility for participation, service, or benefits." *Id.* § 2(p)(2), (3), (5).

The statute refers to the Fund as "a governmental entity." *Id.* § 3(*l*). Given the Fund's role and relative autonomy, we have previously described it as being like a public administrative body. *Williams v. Houston Firemen's Relief & Retirement Fund*, 121 S.W.3d 415, 426 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *see also City of Houston v. Houston Firefighters' Relief & Retirement Fund*, 502 S.W.3d 469, 477 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (agreeing that Fund is public entity). Accordingly, the Fund has governmental immunity from suit. *See Thayer v. Houston Mun. Emps. Pension Sys.*, 95 S.W.3d 573, 576–77 (Tex. App.— Houston [1st Dist.] 2002, no pet.) (discussing immunity enjoyed by state-created entities and citing with approval another court's decision that held another city's firefighter's fund was entitled to governmental immunity).

Because the Fund has governmental immunity, suit against it is barred and it is free from liability unless the Legislature has clearly and unambiguously waived

8

the Fund's immunity. *Dohlen*, 643 S.W.3d at 392. The Legislature has waived the Fund's immunity from suit solely with respect to its board's benefits decisions. *See Williams*, 121 S.W.3d at 428–29 (stating that sole right of judicial review allowed by statute is contained in section 12(a), which allows review of benefits decisions).

The statute provides a limited right of appeal from the board's benefits decisions. A member or member's beneficiary "who is aggrieved by a decision or order of the board, whether on the basis of rejection of a claim or of the amount allowed, may appeal from the decision or order of the board to a district court in the county in which the board is located by giving written notice" to an officer of the board no later than 20 days after the date of the decision or order. TEX. CIV. STAT. art. 6243e.2(1), § 12(a). After serving this notice, the aggrieved member or member's beneficiary must file the notice with the district court along with an affidavit as to service of the notice. *Id.* The board has 30 days after service to file a transcript of all papers and proceedings in the case with the district court, at which point the appeal is perfected. *Id.* § 12(b). The district court then sets a date for hearing the appeal, after which it issues its decision. *Id.* § 12(b), (c). A party may then appeal to the court of appeals. *Id.* § 12(c).

Appellate review of the board's benefits decisions is highly deferential. In any appeal, the reviewing court applies the substantial-evidence rule. *Green v. Houston Firefighters' Relief & Retirement Fund*, No. 14-19-00734-CV, 2020 WL 6737537,

9

at *5 (Tex. App.—Houston [14th Dist.] Nov. 17, 2020, no pet.) (mem. op.). Under this rule, a court presumes the board's decision is valid and that substantial evidence supports it. *Id.* Substantial evidence is more than a mere scintilla of evidence but less than a preponderance of the evidence. *Id.* In other words, the board's decision may be supported by substantial evidence even if the evidence preponderates against it. *Id.* The issue on appeal is not whether the board made the correct decision, but rather whether some reasonable basis in the record exists for the board's decision. *Id.*

Apart from the board's benefits decisions, the statute does not confer a right of judicial review. *See* TEX. CIV. STAT. art. 6243e.2(1), § 3(*l*) (except for waiver expressly provided in statute, statute does not contain implied waiver of any immunity). Thus, the lone other situation in which the Fund itself may be sued is when a plaintiff challenges the constitutionality of the Fund's enabling statute— TEX. CIV. STAT. art. 6243e.2(1)—whether in part or in whole. *See Patel v. Tex. Dep't of Licensing & Regul.*, 469 S.W.3d 69, 75–77 (Tex. 2015) (Declaratory Judgments Act waives governmental entity's immunity from suit when plaintiff challenges constitutionality of statute and seeks only equitable relief); *see also Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621–22 (Tex. 2011) (per curiam) (Declaratory Judgments Act does not waive governmental entity's immunity from suit when plaintiff seeks declaration of her rights under statute or under other law).

10

The Fund's board of trustees has governmental immunity to the same extent as the Fund with one exception: governmental immunity does not bar suits against individual board members in their official capacity alleging they have exceeded their legal authority. *Franka v. Velasquez*, 332 S.W.3d 367, 382–83 (Tex. 2011). Thus, governmental immunity poses no obstacle to suits against board members alleging they have violated statutory or constitutional provisions. *Patel*, 469 S.W.3d at 76.

Claims that a government official, like a member of the Fund's board of trustees, acted beyond his power or authority—commonly referred to as *ultra vires* claims—seek to bring him back into compliance with statutory or constitutional provisions through prospective injunctive remedies. *Chambers–Liberty Ctys. Nav. Dist. v. State*, 575 S.W.3d 339, 348 (Tex. 2019); *see also City of El Paso v. Heinrich*, 284 S.W.3d 366, 368–69, 372 (Tex. 2009) (governmental immunity generally bars retrospective monetary relief but does not bar prospective injunctive remedies, even when these remedies will compel payment of money, in official-capacity suits asserting statutory or constitutional violations). An *ultra vires* claim will lie against an official when he: (1) exceeds the bounds of his granted authority or acts in conflict with the law itself; or (2) fails to perform a purely ministerial act, one that is defined by the law with such precision and certainty that it affords the official no discretion or room for judgment. *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017).

But if the official's act was not on its face beyond his authority or in conflict with the law, the plaintiff has not stated a valid *ultra vires* claim that bypasses the official's governmental immunity. *Matzen v. McLane*, 659 S.W.3d 381, 388 (Tex. 2021). Likewise, when constitutional violations are at issue, immunity from suit is not waived by constitutional claims that are facially invalid. *Klumb v. Houston Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 13 (Tex. 2015); *see, e.g.*, *Caleb v. Carranza*, 518 S.W.3d 537, 545 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (*ultra vires* claims pleaded did not defeat official's governmental immunity because plaintiff's pleaded constitutional claims were facially invalid).

## Analysis

On appeal, McGarry argues that the trial court erred in granting the defendants' jurisdictional pleas on multiple grounds. We examine each in turn.

### *Statutory Waiver of Immunity in the Declaratory Judgments Act*

McGarry argues that the Legislature has expressly waived the Fund's governmental immunity with respect to her challenge of the revised policies and procedures the Fund issued requiring that proof of an informal marriage be submitted before a member's death and in the form of a district-court judgment recognizing the informal marriage. In particular, she relies on the Declaratory Judgments Act's waiver of immunity with respect to municipal ordinances. *See* TEX. CIV. PRAC. &

12

REM. CODE § 37.006(b) (requiring municipalities to be party to declaratory-judgment actions challenging validity of municipal ordinances).

McGarry is correct that this provision of the Declaratory Judgments Act constitutes a waiver of a municipality's governmental immunity. *City of Dallas v. Albert*, 354 S.W.3d 368, 378 (Tex. 2011). In addition, this provision waives the governmental immunity of other governmental entities with respect to statutes. *See* TEX. CIV. PRAC. & REM. CODE § 37.006(b) (requiring Attorney General to be served with copy of proceeding when constitutionality of statute is challenged and granting Attorney General entitlement to be heard); *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 633–34 (Tex. 2010) (Declaratory Judgments Act waives governmental immunity when constitutionality of statutes is challenged).

But the Fund is not a municipality. Nor are its revised policies and procedures about eligibility for survivor's benefits a municipal ordinance or statute. And the Declaratory Judgments Act does not waive governmental immunity more generally. *See Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011) (Declaratory Judgments Act is not general waiver of sovereign immunity and generally does not enlarge subject-matter jurisdiction of courts). Thus, McGarry's reliance on the Act as an express waiver of the Fund's governmental immunity in connection with her challenge of its revised policies and procedures is misplaced.

## Ultra Vires Claims

### Policies and Procedures Inconsistent with the Enabling Statute

McGarry argues that Besselman and other unnamed members of the Fund's board of trustees exceeded their authority in several ways. First, she argues that they acted beyond their statutory authority in adopting the revised application policies and procedures because the Fund's enabling statute makes no distinction between ceremonial and informal marriages. As the enabling statute does not make this distinction, McGarry argues, the board members cannot adopt policies and procedures that distinguish between ceremonial and informal marriages, at least not to the extent that the latter are treated less favorably than the former.

McGarry is correct that the Fund's enabling statute solely refers to marriage, without distinguishing between ceremonial and informal marriage. *See* TEX. CIV. STAT. art. 6243e.2(1), § 1(10)(A) (defining "eligible spouse" as "spouse to whom the member was married at the time of the member's death"). But the distinction between ceremonial and common-law or informal marriage is embedded in Texas law. *See, e.g.*, *Creel v. Martinez*, 176 S.W.3d 516, 519 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (Texas recognizes two forms of marriage, ceremonial and common-law); *McClendon v Brown*, 63 S.W.2d 746, 749 (Tex. App.—Galveston 1933, writ dism'd) (Texas courts have long recognized validity of common-law marriage). Under the Family Code, certain proof is required to establish the existence

14

of an informal marriage precisely because the requisites of a ceremonial marriage were not observed. *See* TEX. FAM. CODE §§ 2.401(a), 2.402 (providing that in judicial, administrative, or other proceedings, informal marriage may be proved by evidence that declaration of informal marriage has been signed by spouses and certified by county clerk or evidence that they agreed to be married and then lived together as husband and wife and represented to others that they were married).

Nothing in the Fund's enabling statute suggests that it dispenses with Texas's longstanding distinction between ceremonial and informal marriage. But McGarry posits that because the Legislature explicitly distinguished between ceremonial and informal marriage in the enabling statutes of other public pension funds, its silence in the Fund's enabling statute prohibits the adoption of policies and procedures that draw this distinction. *See, e.g.*, TEX. CIV. STAT. art. 6243e.1, §§ 1.01, 1.02(13) (defining "spouse" as one "legally married" to member but requiring informal marriage to be evidenced by declaration of informal marriage per FAM. §§ 2.401(a), 2.402 for firefighters' funds in cities with populations of more than 750,000 and less than 850,000).

We disagree with McGarry, given the sweeping authority the Legislature has conferred on the Fund's board of trustees. Under its enabling statute, the Fund's board is empowered to interpret the statute, correct defects in the statute, supply omissions in the statute, and reconcile inconsistencies in the statute. TEX. CIV. STAT.

15

art. 6243e.2(1), § 2(p)(2), (3). In addition, the board is authorized to "determine all questions, whether legal or factual, relating to eligibility for participation, service, or benefits." *Id.* § 2(p)(5). The board may adopt written rules, policies, and procedures so long as they are "not inconsistent" with the statute, and these written rules, policies, and procedures are "final and binding with respect to any matter within the board's jurisdiction and authority." *Id.* § 2(p)(1), (p-1). Because the breadth of the board's authority is self-evident, the courts lack the jurisdiction to review its policies and procedures "absent a manifest conflict with express statutory terms" of the Fund's enabling statute. *Klumb*, 458 S.W.3d at 10; *see also Houston Mun. Emps. Pension Sys. v. Ferrell*, 248 S.W.3d 151, 158–59 (Tex. 2007) ("final and binding" language barred judicial review, thereby depriving trial court of jurisdiction to review pension board's decision as to retirement service credit).

Here, there is no manifest conflict between the board's revised policies and procedures concerning informal marriage and the Fund's enabling statute. Indeed, there is no conflict whatsoever. The Fund's enabling statute is silent as to how and when informal marriage may be proved by a surviving spouse. Thus, the board did not act beyond its authority in adopting the revised policies and procedures requiring informal marriage to be proved either by a declaration of informal marriage or a district-court judgment recognizing the marriage filed before the member's death. *See Klumb*, 458 S.W.3d at 10–11 (board's construction of term "employee"

16

presented no manifest conflict with statute, given that statutory definition of term was composed of essential terms that were undefined and supplemental language adopted by board neither inherently nor patently conflicted with statutory terms).

*Policies and Procedures Inconsistent with the Family Code*

McGarry argues that "the Family Code supplies the means of proof" with respect to informal marriage. Thus, she maintains that Besselman and other unnamed board members have exceeded their authority in adopting the revised policies and procedures on proving an informal marriage because these policies and procedures do not comply with the Family Code and are an attempt to rewrite it.

McGarry is correct that the Family Code generally governs what constitutes proof of informal marriage in "a judicial, administrative, or other proceeding." FAM. § 2.401(a). In particular, the Family Code specifies that an informal marriage may be proved by two types of evidence: evidence that a declaration of their marriage has been signed or evidence that "the man and woman agreed to be married and after the agreement they lived together in this state as husband and wife and there represented to others that they were married." *Id.*; *see also id.* § 2.402(a)–(b) (specifying the requirements for valid declaration of informal marriage).

The revised policies and procedures adopted by the Fund's board of trustees do not mirror the Family Code. Under the Fund's policies and procedures, a beneficiary may prove an informal marriage either by a declaration of informal

17

marriage made in compliance with the Family Code or a final district-court judgment recognizing the existence of the informal marriage under the standards set forth in the Family Code, provided that the declaration or judgment is filed with the Fund before the death of the member through whom the beneficiary claims benefits.

However, the inconsistency between the Family Code and the Fund's revised policies and procedures regarding proof of informal marriage does not give rise to an *ultra vires* claim because the Fund's enabling statute displaces the Family Code. The Fund's enabling statute establishes a "comprehensive statutory scheme" from which all of McGarry's benefits-related rights derive. *Williams*, 121 S.W.3d at 434. Thus, because the Fund's enabling statute comprehensively addresses the specific subject in dispute, it is controlling in the event of a conflict with any other statute, a result the enabling statute expressly mandates. *See* TEX. CIV. STAT. art. 6243e.2(1), § 1E (Fund's enabling statute "prevails" to extent of conflict with "any other law"); *First State Bank of DeQueen*, 325 S.W.3d at 639 (when statute manifests clear legislative intent that conflicting statutes are ineffective, statute prevails over conflicting statutes).

Of course, the Fund's enabling statute itself, as opposed to the board's revised policies and procedures, does not conflict with the Family Code's provisions concerning proof of an informal marriage. But the enabling statute empowers the board of trustees to supplement the Fund's enabling statute in ways that are

18

inconsistent with the Family Code. In particular, the board has the power to "supply any omission" that appears in its enabling statute "in a manner and to the extent that the board considers expedient to administer" the statute "for the greatest benefit of all members." TEX. CIV. STAT. art. 6243e.2(1), § 2(p)(3). The board also has the power to "determine all questions, whether legal or factual, relating to eligibility." *Id.* § 2(p)(5). As the Fund's enabling statute does not specify how an informal marriage is to be proved, the board of trustees did not act beyond its authority by adopting its revised policies and procedures, even though they differ from the Family Code's approach to the same subject. In effect, the board merely supplemented the enabling statute's definition of "eligible spouse" on a subject about which the enabling statute was silent, which is precisely how the Legislature intended this comprehensive statutory scheme to operate. *See Klumb*, 458 S.W.3d at 10 (holding that similarly broad pension statute empowered board to "add language" to statute "it deems necessary for the administration of the pension fund").

*Violation of McGarry's Constitutional Right to Due Process*

McGarry argues the courts have subject-matter jurisdiction to decide whether Besselman and other unnamed members of the Fund's board of trustees acted beyond their authority by denying her constitutional right to due process. She makes arguments as to both procedural and substantive due process.

In terms of procedural due process, McGarry argues that the board violated her rights by refusing to process her application for benefits instead of processing and denying her application. In doing so, the board effectively afforded her no meaningful opportunity to have her claim heard. Thus, at a minimum, McGarry maintains, she is entitled to an order requiring the members of the board to process her benefits application and make a decision on the merits, which would afford her the right to seek judicial review afterward.

As to substantive due process, McGarry argues the board's refusal to process her benefits application deprived her of survivor's benefits that rightfully belong to her. According to McGarry, her late husband had a vested property right in his pension benefits, which is now hers by way of survivorship as his widow through their informal marriage. By denying McGarry's vested property right, she maintains, the board has violated her substantive due-process rights. Thus, she contends the trial court could and should have made a final determination as to whether she is entitled to survivor's benefits as a widow.

Though the United States Constitution and Texas Constitution use somewhat different language with respect to due process, the two are identical in substance. *Klumb*, 458 S.W.3d at 14–15. Whether framed as a violation of procedural or substantive due process, a constitutionally protected right must be a vested right— one that amounts to more than a mere expectancy based on the anticipated

continuance of existing law. *Id.* at 15. As our Supreme Court has observed, the members of public pension funds do not have vested property rights in benefits because the Legislature may diminish or eliminate those benefits at any time. *Id.* at 15–17. For this reason, McGarry's due-process claims are facially invalid, and consequently cannot form the basis of a cognizable *ultra vires* claim against board members that would give the trial court subject-matter jurisdiction. *Id.* at 17.

McGarry concedes the pension benefits at issue are "subject to the whim of the Legislature," but argues that she has a distinct vested contractual right, which the board has disregarded by failing to process her application. She reasons that her late husband and the Fund agreed "that whatever pension benefits he had would also accrue to his qualified survivors," like her. This agreement, she says, gives her a vested contractual right, which the Fund cannot take away, even though the Legislature could abolish the pension system.

McGarry does not cite any authority in support of this argument, and we have not been able to find any supporting authority. *Klumb* is to the contrary: it stands for the proposition that no one has a vested right of any kind in retirement or other benefits administered by public pension funds. *Id.* at 15–17; *see also Van Houten v. City of Fort Worth*, 827 F.3d 530, 539–40 (5th Cir. 2016) (rejecting claims asserted under U.S. Constitution's contracts and takings clauses on basis that Texans do not have vested right to public pension benefits and observing that to extent any sort of

21

contractual right to benefits existed, this right was subject and subordinate to Legislature's unqualified right to amend, modify, or repeal public pension system).

Nonetheless, if we disregard the due-process label McGarry has affixed to her procedural argument and instead focus on the argument's substance, she does state a viable *ultra vires* claim to the extent that she maintains Besselman and other unnamed board members have deprived her of her statutory right to judicial review of an adverse benefits decision by the expedient of not making a benefits decision.

McGarry filed the present suit as a declaratory-judgment action, not as an appeal from the board's (nonexistent) administrative decision denying her survivor's benefits. It is undisputed that the board of trustees refused to process or consider McGarry's benefits application on the ground that she has not submitted satisfactory proof that she qualifies as an eligible spouse, rather than considering and denying her application on the ground that she has not proved she is an eligible spouse. By refusing to act on her application, rather than denying it, Besselman and the other board members have attempted to thwart McGarry's statutory right of judicial review.

Under the Fund's enabling statute, members eligible for retirement or who have a disability claim and their beneficiaries have the right to appeal to a district court from a decision by the board rejecting a benefits claim. TEX. CIV. STAT. art. 6243e.2(1), § 12(a). If the board could circumvent these legislatively granted

22

appellate rights by refusing to process benefits applications, rather than processing these applications and denying them, the statute's provision guaranteeing judicial review would be a dead letter. That the board must act on applications is confirmed elsewhere in the enabling statute, which states the board "shall hear and determine applications for retirement and claims for disability and designate the beneficiaries or persons entitled to participate." *Id.* § 2(k). Thus, McGarry is entitled to a decision. The board members' failure to act on her application for benefits and render a decision on the application constitutes a cognizable basis for an *ultra vires* claim. *See Phillips v. McNeill*, 635 S.W.3d 620, 627–30 (Tex. 2021) (statute gave party right to hearing and failure to docket one thus gave rise to *ultra vires* claim).

*Violation of McGarry's Constitutional Right to Equal Protection*

McGarry argues the courts have subject-matter jurisdiction to decide whether Besselman and other unnamed members of the Fund's board of trustees acted beyond their authority by denying her equal-protection rights.

Though the United States Constitution and Texas Constitution use somewhat different language with respect to equal protection, the two provisions are sufficiently similar as to require the same general kind of analysis. *See Fort Worth Osteopathic Hosp. v. Reese*, 148 S.W.3d 94, 97–98 (Tex. 2004) (stating that both guarantees require similar analysis and treating both as requiring same outcome, given that party did not argue that Texas's guarantee was broader or different).

23

To state a viable equal-protection claim, McGarry must show that she has been treated differently from others similarly situated. *Klumb*, 458 S.W.3d at 13.

McGarry argues she has been treated differently from others similarly situated, asserting that because the enabling statute makes "no distinction between formal and informal marriages," both "are entitled to equal treatment." Thus, she maintains, the board's adoption of a "brand new requirement that a judgment be submitted to the Fund during the member's lifetime" violates her right to equal protection by treating ceremonial and informal marriages differently.

We reject McGarry's contention that simply distinguishing between ceremonial and informal marriage could violate her right to equal protection. The constitutional guarantee of equal protection does not require governmental actors to treat all persons or classes of persons alike heedless of their differences; rather, it "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *In re Nestle USA*, 387 S.W.3d 610, 624 (Tex. 2012).

Ceremonial and informal marriage are not alike in all relevant respects. Proving the existence of an informal marriage invariably requires evidence different from that required to prove a ceremonial marriage because an informal marriage is one in which the requisites of ceremonial marriage were not observed. *See* FAM. §§ 2.401(a), 2.402 (setting forth distinct evidentiary requirements for proving existence of informal marriage). Thus, the Fund's revised policies and procedures

are not constitutionally suspect simply because they distinguish between ceremonial and informal marriages, imposing certain evidentiary requirements on the latter but not the former. *See Dannelley v. Almond as Next Friend of Almond*, 827 S.W.2d 582, 585–86 (Tex. App.—Houston [14th Dist.] 1992, no writ) (rejecting arguments that distinction between ceremonial and common-law marriage was suspect classification subject to heightened scrutiny and that all persons married ceremonially and informally are alike and should be treated same by law). And consequently, McGarry's equal-protection argument is facially invalid and therefore inadequate to state a cognizable *ultra vires* claim against members of the board.

*Violation of McGarry's Fundamental Marriage Rights*

McGarry argues the courts have subject-matter jurisdiction to decide whether Besselman and other unnamed members of the Fund's board of trustees acted beyond their authority by adopting policies and procedures that deprived her of fundamental marriage rights that are constitutionally guaranteed. She maintains that by adopting the revised policies and procedures as to the evidence required to prove an informal marriage after she submitted her application for survivor's benefits, the board is refusing to recognize an existing court judgment establishing that she was informally married to her late husband.

The Fund and the other two defendants deny that a fundamental right is at stake, arguing that the right to marriage is not implicated here because the board's

revised policies and procedures did not bar McGarry from marrying. According to the defendants, McGarry's invocation of marriage rights is mere window dressing, and the parties' real dispute concerns whether McGarry is entitled to survivor's benefits, a dispute that cannot implicate fundamental marriage rights because no one has such rights with respect to public benefits.

The United States Supreme Court has recognized that marriage is a fundamental right based on the due-process and equal-protection clauses of the United States Constitution. *Obergefell v. Hodges*, 576 U.S. 644, 672 (2015). In the Court's view, one of the principal considerations that makes marriage a fundamental constitutional right is the way in which the states have made the institution of marriage "a keystone of our social order" supported by a wide array of governmental rights and benefits, including "the rights and benefits of survivors." *Id.* at 669–70; *see also id.* at 679 (identifying "public benefits" as "intertwined with marriage").

So, while the Fund is correct that McGarry's ultimate goal is to obtain survivor's benefits, we do not think this is dispositive of the issue immediately before us. The dispute at hand concerns what McGarry must do to prove she was informally married to James. The board's failure to recognize she was informally married to James, or to even consider the proof of informal marriage she submitted with her application, is what led her to file this declaratory-judgment action.

We also agree with the Fund that not every public benefit for which marriage is a criterion of eligibility is thereby transformed into a fundamental marriage right. *See, e.g.*, *Califano v. Jobst*, 434 U.S. 47, 53–54 (1977) (rule ending social security benefits upon beneficiary's marriage did not violate principal of equality embodied in due process clause because rule did not try to interfere with right to marry). Nor does the fundamental nature of the right to marry require that courts subject to rigorous scrutiny every governmental rule that relates in any way to the incidents of or prerequisites for marriage. *Zablocki v. Redhail*, 434 U.S. 374, 386 (1978).

But the due-process and equal-protection clauses of the United States Constitution guarantee more than just the literal right to marry. They also contain a right of recognition: at the very least, a marriage recognized as valid by one jurisdiction must be recognized as valid by others. *See Obergefell*, 576 U.S. at 680–81 (holding that marriages validly entered out of state must be recognized by states that would not recognize their validity and disapproving of recognition bans).

Here, the Fund's revised policies and procedures on informal marriage operate somewhat akin to a recognition ban. It is undisputed that a Montgomery County court at law recognized the validity of McGarry's informal marriage and that the county court at law did so before the Fund's board adopted its revised policies and procedures. Indeed, McGarry had applied to the Fund for survivor's benefits,

27

submitting the court's judgment recognizing the validity of her informal marriage with her application, before the board adopted its revised policies and procedures.

Of course, the prior county court at law judgment does not have preclusive effect in the Fund's proceedings. *See Est. of Howard*, 543 S.W.3d 397, 403 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (judgment entered in heirship proceeding that recognized informal marriage had no preclusive effect in wrongful-death suit because defendant was not in privity with party to heirship proceeding). But the Fund's revised policies and procedures do not just decline to accord that judgment preclusive effect, they bar any consideration of the judgment or the evidence supporting it. Indeed, these revised policies and procedures bar McGarry from offering any proof whatsoever of the validity of her informal marriage—and thus prevent her from even trying to establish eligibility for benefits—because they require that different proof—a declaration of informal marriage or a district-court judgment recognizing the marriage—be submitted before a member's death. In sum, because James is already dead, McGarry can never satisfy this proof requirement.

The question is not whether the Fund's board of trustees can adopt policies and procedures as to the terms on which it will recognize informal marriages. As we have already said, it can. *See* TEX. CIV. STAT. art. 6243e.2(1), § 2(p)(1)–(3), (5).

Nor do we necessarily question whether the Fund may require members and their beneficiaries to submit proof of an informal marriage before a member's death

28

without running afoul of fundamental marriage rights. With respect to at least one other public pension fund, the Legislature has explicitly limited proof of informal marriage to duly recorded declarations of informal marriage made in compliance with the Family Code. *See* TEX. CIV. STAT. art. 6243e.1, § 1.02(13). Because the Family Code requires both spouses to sign such declarations, that statute necessarily requires an informal marriage to be proved before a member's death, even though it does not require that the declaration be filed with the pension fund beforehand. *See* FAM. §§ 2.401(a)(1), 2.402(a), (b)(6) (requiring parties' signatures). Such proof requirements serve the obvious purpose of counteracting the lack of public records documenting the existence of informal marriages and thereby protecting public pension funds from spurious benefits claims made after members are dead.

But can the Fund's board not only adopt but also apply policies and procedures of this kind to an ostensible beneficiary's claim for survivor's benefits after the member has died and the benefits application is already on file without violating the applicant's fundamental marriage rights? No, because under these circumstances the ostensible beneficiary is deprived of any opportunity to prove that she was informally married to the deceased member by policies and procedures of which neither one had notice and with which neither one had a chance to comply.

In this regard, we draw guidance from our sister court's *Dannelley* decision. In that case, an intervenor in a paternity suit sought to prove that she had previously

been informally married to the now deceased father. 827 S.W.2d at 583–84. But her alleged informal marriage to the deceased had admittedly ended more than a year beforehand, and a statute of limitations that has since been repealed required that any claim of informal marriage had to be made within one year of the relationship's end. *Id.* So, the trial court held she had no standing to intervene. *Id.*

On appeal, the would-be intervenor asserted that the statute of limitations was unconstitutional, in part because it violated her equal-protection rights by allowing a ceremonial marriage to be proved after the one-year period but not an informal one. *Id.* at 585. The court of appeals disagreed, holding that no fundamental right or suspect class was implicated by the one-year statute of limitations, and that the legislature could rationally treat ceremonial and informal marriages differently in this context due to the lack of public-record proof associated with the latter. *Id.* at 585–86. But the court of appeals noted in its opinion that the statute of limitations did not completely deprive the intervenor of the right to prove that she had been informally married to the decedent and also that she had not offered any explanation as to why she had not complied with the one-year limitations period. *Id.* at 585.

In contrast, the revised policies and procedures at issue in this appeal do completely deprive McGarry of any opportunity to prove she was informally married to James, at least for purposes of benefits proceedings before the Fund. Moreover, McGarry has explained why she did not comply with these policies and procedures:

30

they did not exist before James died and she applied for benefits. And she did successfully assert that she had been informally married to James in an heirship proceeding before the Fund's board adopted its revised policies and procedures.

On this record, we cannot say that McGarry's claim that the board acted beyond its authority by disregarding her fundamental constitutional marriage rights is facially invalid. Because her claim is not facially invalid, it is not subject to dismissal for lack of subject-matter jurisdiction on a plea to the jurisdiction. *See Klumb*, 458 S.W.3d at 13 (suits to vindicate constitutional rights not barred by sovereign immunity, so long as constitutional claims are not facially invalid).

### *Constitutionality of the Fund's Enabling Statute*

Finally, McGarry argues that to the extent the Fund's enabling statute empowers or authorizes the Fund, Besselman, or the board of trustees to act as they have in this proceeding, she challenges the constitutionality of the enabling statute itself. She argues the Fund lacks governmental immunity as to this claim as well.

We agree that a governmental entity, like the Fund, does not have immunity from a suit challenging the constitutional validity of a statute due to the waiver of immunity in the Declaratory Judgments Act. *See Patel*, 469 S.W.3d at 75–77 (Declaratory Judgments Act waives governmental entity's immunity from suit when plaintiff challenges constitutionality of statute and seeks only equitable relief).

However, we note the Attorney General's absence from this proceeding. On

31

remand, we therefore direct McGarry to file the required form notifying the Attorney General of her challenge of the statute's constitutionality. *See* TEX. GOV'T CODE § 402.010(a) (requiring party who claims statute is unconstitutional to file form with trial court, which must then notify Attorney General of constitutional challenge).

### *Defendants' Jurisdictional Counterarguments*

The Fund and the other two defendants make two jurisdictional counterarguments. First, they argue that all of McGarry's *ultra vires* claims are invalid because she does not assert them against the specific board members who allegedly violated her rights. Second, they argue that until the Fund has made a final benefits decision, it has exclusive jurisdiction that displaces any judicial challenge.

As to the first counterargument, we agree that a plaintiff must assert *ultra vires* claims against individual government officers in their official capacity, rather than against the governmental entity that employs them or any of its subdivisions. *See Sefzik*, 355 S.W.3d at 621 (proper defendant is state official); *Heinrich*, 284 S.W.3d at 377 (suit must be against appropriate officials acting in official capacity). But McGarry has sued Besselman, who is the chairman of the Fund's board of trustees. And even if she should sue other board members in addition to or instead of Besselman, this failing is a jurisdictional defect that can be cured by repleading. When, as here, a jurisdictional defect is not incurable, dismissal is improper. *See Dohlen*, 643 S.W.3d at 397. Therefore, this argument does not support dismissal.

32

As to the second counterargument, we agree that the Fund has exclusive jurisdiction over benefits claims while a benefits application is pending before it. *See Ferrell*, 248 S.W.3d at 157 (when Legislature gives administrative entity, like municipal pension system, sole authority to make initial decision on issue, entity has exclusive jurisdiction over issue); *Williams*, 121 S.W.3d at 427–29 (recognizing that Fund is administrative entity with exclusive jurisdiction). Because applicants must exhaust their administrative remedies before seeking judicial review, the Fund's exclusive jurisdiction bars lawsuits challenging its benefits decisions until the Fund has made an appealable decision. *See Ferrell*, 248 S.W.3d at 157 (trial court lacks jurisdiction when plaintiff has not exhausted administrative remedies).

But this is not an appeal from a benefits decision, final or otherwise. The Fund has not denied McGarry's application for benefits; it has refused to process her application altogether. McGarry's suit is one for declaratory judgment, in which she asserts that Besselman and other unnamed board members have exceeded their statutory or constitutional authority by refusing to process her benefits application based on proof requirements as to informal marriage that are impossible for her to satisfy and that were imposed only after she applied. She also claims the Fund's enabling statute is unconstitutional to the extent that it authorizes the board members' refusal to act on her application under these circumstances. The Fund's exclusive jurisdiction does not apply to McGarry's *ultra vires* claims or her

33

challenge to the constitutionality of the Fund's enabling statute. *See Williams*, 427–33 (holding benefits claim was barred by Fund's exclusive jurisdiction but reviewing applicant's constitutional claims, including *ultra vires* claims, on merits).

## CONCLUSION

We conclude that the trial court erred in holding that it lacked subject-matter jurisdiction to hear McGarry's declaratory-judgment action. In particular, we hold:

(1) the trial court has jurisdiction to hear McGarry's claim that Besselman, or other relevant board members should she join them, acted beyond his authority by refusing to process and render a decision granting or denying her application for survivor's benefits;

(2) the trial court has jurisdiction to hear McGarry's claim that Besselman, or other relevant board members should she join them, acted beyond his authority by applying the revised policies and procedures concerning proof of an informal marriage to her application for benefits; and

(3) the trial court has jurisdiction to hear McGarry's claim that the Fund's enabling statute is unconstitutional to the extent it authorizes Besselman and any other relevant board members to refuse to process her application or apply the revised policies and procedures to her application for benefits.

Accordingly, we reverse the trial court's judgment granting the jurisdictional pleas of the Fund, its board of trustees, and Besselman in his official capacity as chairman of the board of trustees. We remand this cause to the trial court for further proceedings consistent with our opinion.


Gordon Goodman
Justice

Panel consists of Justices Goodman, Hightower, and Guerra.

34